## STEWART v. ANDERSON, AND ANOTHER.

1. A mortgage is not avoided by the discharge of the mortgagor as a bankrupt under the act of Congress of 1841.

2. A. executed a mortgage to P. in 1841; conditioned to be void, if he should pay to the mortgagee certain sums of money on days designated for the payment; *and further*, if he should pay to the P. & M. Bank of M. the sum of $321.67, in three months, &c.; the payment of which was secured to the bank by a note and mortgage made by P. in 1837: in February, 1842, A. was declared a bankrupt; in May of the same year the mortgaged premises were sold under a power of sale contained in the mortgage by P. to the bank in consequence of the failure of A. to pay the debt secured thereby; at this sale A. became the purchaser, and received a deed for the property; in July following a final decree was rendered, declaring him a bankrupt, and ordering a certificate of discharge from his debts: *Held*, that A. did not acquire an absolute title to the premises, but held them in subordination to the mortgage of 1841, so far as the debts intended to be thereby secured were unsatisfied; and this although that mortgage contained no warranty of title.

3. The words "grant, bargain and sell," when used in a mortgage in fee, are within the spirit of the act of 1803, "respecting conveyances," a covenant to the grantee, his heirs, &c., that the grantor was seized of an indefeasible estate in fee simple, freed from incumbrances done or suffered from the grantor, &c., as also for quiet enjoyment against the grantor, his heirs, &c.

Writ of Error to the Court of Chancery sitting at Mobile.

On the 5th of October, 1843, the plaintiff in error filed his bill for the foreclosure of the equity of redemption of the defendant, Anderson, and the sale of certain real estate which the latter had previously conveyed by way of mortgage. The facts of the case, as they are gathered from the bill, answer and exhibits may be thus condensed. On the 21st December, 1841, Anderson executed the mortgage in question, for the consideration, as recited, of $1,816 15, paid to him by Jacob Page, the mortgagee. The operative terms of the conveyance are, "grant, bargain, sell, alien, enfeoff, convey and confirm;" and the mortgage, after describing the land, &c.

proceeds thus: "To have and to hold, all and singular the above described tract, piece, parcel, or lot of land, &c.. unto the said party of the second part, his heirs," &c.

The deed then provides that it shall be null and void, if the mortgagor shall pay to the mortgagee, the sum of $1,816 15, due by six several promissory notes, the amounts of which are particularly mentioned, and payable at different times, from six to twenty-one months after the date of the mortgage. *And further*, if he shall pay to the Planters' and Merchants' Bank of Mobile, the sum of $321 67, in three months with interest. The last mentioned sum was to be paid to the Bank in extinguishment of a note made by Page, which was secured by a mortgage executed by him, on the premises in question.

The plaintiff sues as the assignee of Page, of the six notes and mortgage. It is further shown, that on the 8th day of February, 1842, the defendant, Anderson, was declared a bankrupt by a decree of the district court of the United States for the southern district of Alabama; and that on the 4th day of July next thereafter, a final decree was rendered, declaring the defendant a bankrupt, under the laws of the United States, and a certificate of discharge granted to him.

The mortgage from Page to the Planters' and Merchants' Bank, was made on the 14th day of November, 1837, and contained an authority to the bank, upon default being made, in the payment of the debts intended to be secured, to sell the mortgaged premises, or so much as might be necessary for that purpose, *&c.* The mortgage becoming forfeited by a non-compliance with the condition therein contained, the mortgaged property was regularly sold by the bank, on the 9th of May, 1842, at which sale Anderson became the purchaser, and received a deed for the same. It is also shown, that the premises in question were sold and conveyed by the assignee in bankruptcy to Anderson, on the 4th day of June, 1842.

These several facts, it is insisted by the mortgagor invested him with a complete legal and equitable title as against Page, or his assignee, and that the complainant cannot enforce the mortgage against him. The chancellor was of opin-

64

ion, that although the mortgage executed by Anderson provided for the payment of the debt due to the bank by Page, it could not be intended that the former purchased the property in compliance with that term of the condition. That the first decree of bankruptcy relieved Anderson from liability to pay his debts, although it did not extinguish the mortgage, and the creditors should have looked to the effects transferred to the assignee. That the sale under the mortgage to the bank was a virtual extinguishment of the complainant's lien; and the purchaser being authorized to acquire and hold property without its being subject to the debts from which he sought to be discharged by an application for the benefit of the bankrupt law, it would be intended that he purchased for his own use. The bill was consequently dismissed at the plaintiff's cost.

DARGAN, for the plaintiff in error, made the following points: 1. The mortgage by Anderson created a lien, which is not only not disturbed, but expressly preserved by the bankrupt act of 1841. 2. The mortgage was valid as between the mortgagor and Page, although the former may have had no title to the premises; if he afterwards acquired a title it would inure to the mortgagee. [1 Powell on Mortg. 190 and notes.] So if the mortgagor become bankrupt, and his assignee, in virtue of the right derived from him, acquire a good title, the mortgagee shall have the benefit of it. [9 Ves. Rep. 100; 1 Powell on Mortg. 191 to 3, and notes.] And if one mortgage slaves, then sell them for a full consideration, and is discharged from his debts under the insolvent laws, and afterwards purchase the mortgage, the title thus acquired inures to his purchaser. [2 H. & Johns. Rep. 411.] 3. The statute of limitations may bar the recovery of a debt, and yet the mortgage by which it is secured remain operative. [7 Paige's Rep. 465.] So the decree in bankruptcy discharges the debtor, without affecting any liens that he may have given for its payment. 4. The mortgage to Page was a valid lien, when the sale was made by the bank—in fact, Anderson was personally liable to pay the debt to the bank, and as against him the complainant is entitled to a foreclosure of his mortgage; and he should be considered as

having become the purchaser in fulfilment of his stipulation with Page.

J. A. CAMPBELL, for the defendants, insisted—1. After the decree adjudging Anderson a bankrupt, his effects were vested in the assignee, and all the creditors whose debts were provable under the commission, should have looked to the assignee for payment—in fact the former was absolved from all personal liability to pay them. [1 Ves. & B. Rep. 545 ; 18 Ves. Rep. 72 ; 5 Madd. Rep. 48.] 2. If the purchase had been made of the mortgaged premises with the effects of the bankrupt in the assignees hands, then the title would have inured to the mortgagee. [See 1 Powell on Mort. 191-2-3-4.] 3. The plaintiff in error rests the argument upon the proviso to the second section of the bankrupt act, which declares that the assignee's estate shall not be enlarged by the destruction of any lien or incumbrance ; and upon the further ground that the mortgage creates an estoppel, as between the mortgagor and mortgagee, so as to vest by legal operation an after acquired title in the latter. The reason of this latter rule, is founded in the fact that a fiduciary relation exists between the parties. [1 Story's Eq. 304, et post.] And it may also result from the covenant of warranty. In this case there is no such covenant, and the fiduciary relation is destroyed by bankruptcy—the bankrupt is absolved from his contracts —his estate passes to the assignee, and between himself and creditor all privity is destroyed. [§ 4 of Bankrupt Law of 1842 ; Chitty on Bills, 74.]

The clause in the English statute in respect to property acquired after the proceedings in bankruptcy, is not found in our act. [See the British statute in 1 Stephens' Nisi Prius, 693 ; Eden's Bank. Law, 200.] Although the bankrupt is not discharged until he obtains a certificate, yet when the proceedings are consummated, they relate back, so as to protect his acquisitions between the time of ther commencement and close.

COLLIER, C. J.—It is conceded by the defendant's counsel, that the mortgage to Page was not avoided by the proceedings in bankruptcy, which resulted in the mortgagor's

discharge from his debts, which were proveable under the commission. As the case is presented upon the record, this is *the obvious conclusion from the last proviso of the second section of the act of* 1841. The question is, whether the defendant by his purchase under the mortgage from Page to the bank acquired a title to the premises which he could successfully assert against his mortgagee? It is stated as a principle of the common law, that a mortgagor cannot dispute his mortgagee's title against his own solemn act, nor can he while in possession, bar his title by fine or recovery. [Coote on Mort. 347.] In accordance with this rule it has been held, that a mortgagor shall not be heard to alledge that he had no estate in the premises. By the mortgage, he professes to convey, and thus declares that he had an interest co-extensive with that he undertook to transfer; and he will not be heard to say, in contradiction of his own deed, or in opposition to a claim founded thereon, that he was guilty of a falsehood, and had no estate or interest therein. [5 Hols. Rep. 102; Id, 156; 12 Johns. Rep. 201; 3 Wash. C. C. Rep. 546; 2 Rand, Rep. 93.]

Powell, in his Treatise on the Law of Mortgages, 190, lays down the law thus: "If a mortgage be made of an estate to which the mortgagor has not a good title, and then he who has the real title conveys to the mortgagor, or his representatives, with a good title, the mortgagee will be entitled in equity to the benefit of it; for it will be considered there, as a graft into the old stock, and as arising in consideration of the former title." Again: "if the mortgagor obtain a renewal, or the grant of a fresh term in remainder, without the privity of the mortgagee, such fresh term will be considered as held in trust for the mortgagee. And though the mortgaged lease may be surrendered, or expired by effiux of time, still the fresh term must be assigned to the mortgagee, to hold till the debt is satisfied. [Id. note, (O. 2.) The case cited by the plaintiff's counsel, from 2 Harris & J. Rep. depends upon the same principle, and maintains that the intervention of insolvency, and the discharge of the mortgagor from his debts in consequence thereof, did not authorize him to hold, divested of the lien of the mortgagee, a paramount title to the premises, which he had afterwards acquired,

It is supposed by the defendant's counsel, that the doctrine we are considering, rests upon the ground, either of privity between the mortgagor and mortgagee, or because the mortgage contains a warranty of title, and it is insisted that neither of these grounds exist in this case ; that the privity is destroyed by the bankruptcy of the mortgagor, and the mortgage contains no warranty that would carry the subsequently ·acquired title to the mortgagee. In respect to the debt intended to be secured, it may be conceded, that as it cannot be recovered by action after the mortgagor's discharge as a bankrupt, all privity between himself and mortgagee has thus far ceased to exist. But the bankrupt law expressly excepting from its operation all liens, &c. which were valid in their inception, it would seem to follow, that the rights and remedies of the mortgagee in respect to the mortgage in question, were wholly unaffected by it, and that the relation of the parties remains undisturbed. The 20th section of the act of 1803, "respecting conveyances," (Clay's Dig. 156,) enacts, that "in all deeds to be recorded in pursuance of this act, whereby an estate of inheritance in fee simple shall hereafter be limited to the grantor, (grantee,) or his heirs, the words, grant, bargain, and sell, shall be adjudged an express covenant to the grantee, his heirs and assigns, to wit : that the grantor was seized of an indefeasible estate in fee simple, freed from incumbrances done or suffered from the grantor, (except the rents and services that may be reserved,) as also for quiet enjoyment against the grantor, his heirs and assigns; unless limited in express words contained in such deed : and the grantee, his heirs, executors, ·administrators and assigns, may in any action assign breaches, as if such covenants were expressly inserted." The deed, it is true, does not convey an absolute estate in fee simple, yet it confers an interest in the land, with the right of possession, which may, if enjoyed by the mortgagee, ripen into a fee, unless the mortgagor shall elect, before that event, to avail himself of the condition, and avoid the conveyance. Or perhaps, to speak more pointedly, the mortgagee was vested at law with a fee simple estate, defeasible upon condition subsequent. This being the case, and the terms, "grant, bargain, sell," being employed to pass the property, the mortgage at least comes within the spi-

rit and intention of the statute, and must be construed equally effectual as if it contained such an express covenant as the act implies.

At the time the defendant was declared a bankrupt, the mortgage in question, as a security, was unimpaired by any act done, but was operative against him, and he now seeks to defeat it by setting up an interest subsequently acquired by himself, the successful assertion of which would be a breach of his warranty. This cannot be done. If it were allowed, the mortgagee might perhaps make it a ground of action, against which the defendant could not set up his certificate; because it would have accrued after the decree adjudging him a cankrupt. [Owen on Bank. 161 to 165.] It would be strange if the complainant could be defeated in equity, when the ground of defence showed such culpability as subjected the defendant to an action growing out of his neglect of duty.

Although we have considered the case upon the argument of the defendant's counsel, we are not prepared to admit that the reason why a title acquired by a mortgagor, inures to his mortgagee, depends upon the fact whether the former has warranted the title which he has undertaken to convey to the latter. It rests upon higher ground, viz: that as the mortgagor has, by his deed, impliedly asserted a right to pledge the premises by a conveyance in fee, he shall not be allowed to insist that he had a less estate, and whatever interest he afterwards acquires, shall vest in the mortgagee to make good the title which he professed to transfer. In this view, it is immaterial whether the mortgagor's purchase was made after he was declared a bankrupt or not—he cannot gainsay the title which he professedly conferred.

In considering this case, we have endeavored to forget the moral aspect of the defence, though it cannot be disguised, that the defendant presents himself in a most ungracious attitude; and we will no deny that we are better pleased with our decisions, when they result in the harmony of municipal with moral justice.

The decree of the court of chancery must be reversed, and the cause remanded,

GOLDTHWAITE, J.—Waiving the consideration of the first point, I prefer resting my concurrence in this case upon the second ground considered, viz : That the implied warranty estops Anderson from setting up a title acquired subsequently to the execution of the mortgage, to defeat his mortgagee, or the complainant who claims by assignment.