# Chapman *et al. v.* Abrahams, and Abra-hams *v.* Chapman *et al.*

### Bill in Equity to assert Vendor's Lien and to Foreclose Mortgage.

1. *Vendor's lien, resulting trust what does not create.*—One who advances money to the vendee to pay the deferred payment on a purchase of lands, or pays the amount, at the vendee's request, to the vendor who conveys to the purchaser, has no vendor's lien on, or resulting trust in the lands.

2. *Mortgage of statutory estate of wife, how far void; when husband by joining in, will convey his life-estate on wife's death intestate.*—Where the wife, with the husband's concurrence, purchases and partly pays for land, and they procure a third person to advance the amount of the deferred payment, which is paid by the wife to the vendor, who conveys to her in terms creating a statutory estate, husband and wife promising at the time to execute a mort-gage on such lands to secure the lender, and they afterwards execute a note and mortgage pursuant to the agreement, the instrument containing the statutory words "grant, bargain and sell," and also covenants to "warrant and defend the title" against the "lawful claims of all persons,"—such mortgage is void as to the wife, and can not prejudice her or her heirs; but its covenants estop the husband from denying its validity; and upon the wife's death intestate, the husband surviving, the mortgage will have the effect to pass his life-estate.

BRICKELL, C. J. (*dissenting*), held that the mortgage was a valid security against the wife's interest in the lands.

APPEALS from Chancery Court of Marengo.

The record does not show who presided on the hearing.

These are cross appeals from a decree of the chancellor upon the demurrers to a bill filed by Mrs. Annie Abrahams, against Samuel E. Chapman, J. J. McCorkle, as administra-tor of Martha, the deceased wife of said Samuel, R. H. Lock-

hart, and the heirs of said Martha. The original bill was amended, in certain particulars, which need not be specially noticed, and alleged in substance the following state of facts : On the 13th day of November, 1869, said Martha, the wife of Samuel Chapman, with the consent of her husband, purchased the tract of land in controversy, paying one-half of the price in cash, the payment of the remainder being postponed. Being unable to meet the deferred payment, they " appealed to Lockhart to make said payment for said Martha, it being understood and agreed between said Samuel, and his wife and said Lockhart, if said Lockhart would make the last payment to Clarke, the vendor, that said Martha would execute a mortgage on the lands to said Lockhart for the money so advanced by him. It was further agreed between said parties that they would get Clarke, the vendor, to draw the mortgage, and said Martha would execute it at the time she paid the balance due on the lands. Lockhart advanced the money with which to make the last payment, but it not being convenient to execute the mortgage then, the matter was deferred to a future day." Upon making this payment the vendor Clarke executed and delivered a deed to said Martha. This deed is made an exhibit, and its terms show it created in her a statutory estate. On the 24th day of May, 1871, pursuant to the understanding and agreement with Lockhart, said Martha and Samuel, her husband, executed their note to Lockhart for the amount paid by him, and on the same day secured the same by their mortgage, duly executed and acknowledged by both of them, on the lands deeded by Clarke to Martha. This mortgage is also made an exhibit. After setting forth the amount, date, &c., of the note of Martha and Samuel to Lockhart, which "they desire to secure," it states that whereas the said Martha E. is a married woman, but owns a separate estate by deed to a certain tract of land, [describing that conveyed to said Martha by Clarke] which we wished, desired and intended to convey to said Lockhart to secure the payment of said note . . . therefore the said Martha E. and Samuel Chapman do hereby give, grant, bargain, sell and convey to said Lockhart, his heirs and assigns forever, all of said lands. . . . We further say that the said debt for money advanced by said Lockhart to pay a part of the price of said lands for said Martha, and the interest thereon, and that it is now her intention to bind said lands for the payment of said sum. We covenant, to warrant and defend the title to said lands to said Lockhart, his heirs and assigns, against

[Chapman v. Abrahams.]

the lawful claims of all persons." The instrument contains a power of sale, and directs the surplus proceeds of sale to be paid over to said Martha, as her " separate estate."

Several partial payments were made on the note. On the 25th day of July, 1871, said Martha died intestate, leaving no estate but said lands. After her death, and after the law day of the mortgage, Lockhart transferred the note and mortgage to the complainant Abrahams, who filed this bill to foreclose the mortgage, asserting also a vendor's lien on the lands.

The administrator and heirs of Mrs. Chapman demurred to the bill, assigning, among other grounds, " 2d, that it appears that complainant has no vendor's lien on the lands ;" and further, that the mortgage sought to be foreclosed is void, and that it was not shown that the agreement to execute the mortgage was in writing. Samuel Chapman also demurred separately, assigning, in the same order, the same grounds as the administrator and heirs, with the additional ground that as to him complainant had an adequate remedy at law.

The chancellar made the following decree : " Demurrer heard, and it is ordered that the second ground of demurrer is well taken, and is hereby sustained, and that the other grounds of demurrer assigned are hereby overruled." Complainant, and defendants also, appealed from this decree, and by consent, assign errors upon the same record. All informality in the decree, in so far as it did not pass directly upon the demurrer, but only on the grounds of demurrer, was waived.

Mrs. Abrahams assigns as error the decree sustaining the second ground of demurrer to the bill. Samuel Chapman, and the administrator and heirs, separately assign as error, that the court overruled all the grounds of demurrer, except the second.

WATTS & SONS, and W. H. & R. E. CLARKE, for Chapman and other defendants to the bill.—1. The deed is made an exhibit, and the bill not contradicting it, it must be treated as true on demurrer.—*Minter & Gale v. Bank*, 23 Ala. 762. This deed created a statutory estate in Mrs. Chapman.

2. The mortgage to Lockhart is absolutely void as a conveyance of the wife's estate.—*Weil v. Pope*, 53 Ala. 585. There can, therefore, be no foreclosure of this mortgage, as against Mrs. Chapman's administrator and heirs.

3. There is no vendor's lien. The purchase-money was

[Chapman v. Abrahams.]

paid to the vendor, and he conveyed to Mrs. Chapman. Lockhart sold her nothing, and conveyed nothing to her. He merely *paid* the debt she owed for the purchase-money. 3 Ala. 168; 53 Ala. 120; 3 Johns. Chancery, 56; 6 Ala. 204.

4. Under the facts of this case, the warranty in the mortgage can not operate to convey the life-estate of Sam'l Chapman in the lands on the wife's death intestate. The deed shows on its face that the husband did not profess to own or convey any estate, but that he joined in the execution for conformity merely.—Code, § 2193. The mortgage shows that the lands attempted to be conveyed were the statutory estate of the wife, and that it was made for the sole purpose of conveying *that estate only*. The husband had at most a bare expectancy, and the recitals show that he did not assert seisin or title of any kind in himself. If a deed is void as a conveyance, the warranty is void.—Bigelow on Estoppel, 283; 3 Adolphus & Ellis, 649; 1 A. K. Marshall, 459; 8 Cowen, 543; 6 Texas, 479; 4 Porter, 141. The mortgage was not only void for want of warranty, but was absolutely prohibited by the policy and spirit of our laws. Lockhart knew all the facts, and his transferee stands in his shoes. There is no element upon which an estoppel can be worked out against Sam'l Chapman's assertion of the right to the life-estate.—5 Denio, 690.

S. H. SPROTT, and T. B. WETMORE, *contra.*—The case of *Jones v. Wilson* is conclusive against the claim of Samuel Chapman.

Under the case as made by bill, the complainant is entitled to relief on any one of three grounds: 1st, vendor's lien; 2d, resulting trust; 3d, the right of foreclosure of the mortgage.

It is believed that where the very money, for which a lien on lands is claimed on lands purchased as the statutory estate of the wife, was the very creation of that estate, at the moment it sprang into existence, equity will always hold that a lien shall rest thereon, to the extent of the amount expended in its creation in favor of the party making the payment, unless the rights of innocent purchasers or creditors intervene.—Perry on Trusts, § 126. Under the order of the Probate Court for the sale of the land, Mrs. Chapman had no separate estate till the land was paid for. This is the law of the State.—*Pylant v. Reeves*, 53 Ala. p. 134; Code of 1876, § 2468.

There was, therefore, in equity at the time, a lien in favor of Lockhart for the money so advanced by him.—*Preston &*

*Stetson v. McMillian,* 58 Ala.; *Tilford v. Torrey & Lockwood,* 53 Ala. 120; *Lee v. Browder,* 51 Ala. 288; U. S. Digest, vol. 13, p. 606, § 292, under head of Trusts.

But there was at the time of the creation of this separate estate in the manner stated, an agreement made by the husband *and* wife, that it *should* be bound for the purchase-money to Lockhart, who created it, and this contract was such as a court of equity would enforce.—*Leach v. Noyes,* 45 N. H. 364; *Marks v. Cowles,* 53 Ala. 612.

Had the note and mortgage been executed at the time, as agreed, a court of equity would have upheld it, and it would have been considered as part and parcel of the deed of conveyance.—*Marks v. Cowles et al. supra; Byrne v. Marshall,* 44 Ala. 355; *Becton v. Selleck et al.* 48 Ala. 226; *Smith v. Doe, ex dem. Carson,* manuscript; *Henderson v. McBee,* 79 North Carolina, p. 219.

The mortgage not being executed at that time, the husband having concurred in the agreement, a court of equity would have enforced specific performance.—*Marks v. Cowles et al. supra,* page 503, referring to 45 N. H. 364.

The parties having done what a court of chancery would have compelled them to do, the act performed will be upheld, and will relate back to the time of agreement to perform it— which was the time of the payment of the purchase-money. 1 Jones on Mortgages, § 164; 7 Hun. (N. Y,) 1190; 1 Story Eq. Juris. § 64 g. In equity, as against Lockhart, the title did not for one moment vest in Mrs. Chapman.—1 Jones on Mortgages, § 466; *Curtis v. Root,* 20 Ill. 57. Mrs. Abrahams being transferee, has all the rights of Lockhart. The statute of frauds does not apply.—*Gafford v. Starnes,* 51 Ala. 434.

STONE, J.—The strongest view of the bill which can be taken—the one most favorable to appellant—is that Lockhart paid the money to Clark for, and at the request of Mrs. Chapman. This extinguished the debt which Mr. and Mrs. Chapman owed, and created a new debt, or legal liability to Lockhart. It was no transfer of the original demand to Lockhart. If such had been its effect, then any defense which Chapman and wife might have against Clark, could have been successfully urged against Lockhart. Paying the debt at request, Lockhart became a new creditor on a new consideration, and could not be affected by any infirmity in the original consideration. On such debt *indebitatus assumpsit* would lie in favor of Lockhart, irrespective of the char-

acter, form, or validity of the debt he had thus extinguished. 1 Chit. Pl. 100, 350.   It did not transfer the debt, or vendor's lien to Lockhart.—*Pettus v. McKinney*, 56 Ala. 41; *Foster v. Athenæum*, 3 Ala. 302; *Dennis v. Williams*, 40 Ala. 633; *Conner v. Bates*, 18 Ala. 42.

There is no resulting trust in this case.—*Tilford v. Torrey*, 53 Ala. 120; *Preston & Stetson v. McMillan*, 58 Ala. 84.

It results from the foregoing principles that the Chancery Court did not err in sustaining the second ground of demurrer.   Mrs. Abrahams can take nothing by her appeal in this cause, but must pay the costs incurred therein.   This disposes of the only ground of demurrer which the chancellor sustained, and of the only error assigned by her.

Appellees have also assigned errors, pursuant to their appeal and the agreement found in the record.   We will first consider those assigned by the heirs-at-law, children, and personal representative of Mrs. Chapman.   One ground of demurrer assigned in the court below is, that Mrs. Chapman was a married woman when she executed the note and mortgage, that the lands conveyed were her statutory separate estate, and that the note and mortgage are inoperative as to her and her property.   The bill avers that the lands were the separate estate of Mrs. Chapman, purchased and conveyed to her during her coverture, and her title-deed to the property from Clark, the grantor, is made part of the bill. It bears date in February, 1871, and conveys the land to her, without any words excluding her husband's marital rights. The bill and entire record are silent as to the source from which the money was derived, with which the cash payment for the land was made, and there is no averment that, previous to the purchase of the land in controversy, Mrs. Chapman had, or had not a separate estate.   These unexplained averments constitute her claim a statutory separate estate. *Short v. Battle*, 52 Ala. 456.   If this were even doubtful, under the rule laid down in *Reel v. Overall*, 39 Ala. 838, we would feel bound to hold that the averments of the present bill do not show that Mrs. Chapman owned an equitable separate estate.   Her estate then, for the purposes of this suit, must be treated as a statutory separate estate.   Indeed, the mortgage, which the bill seeks to foreclose, declares that the lands are the separate estate of the wife.   This case, then, presents the simple question of a mortgage by husband and wife of the wife's statutory separate estate, to secure a debt not incurred in the purchase of the property, but in procuring money with which to pay for property previously

purchased. We have uniformly held that such mortgage is ineffectual to bind the statutory estate of a married woman. *Battle v. Short, supra; McDonald v. Mobile Life Ins. Co.,* manuscript; *Jones v. Wilson,* 57 Ala. 123; *O'Connor v. Chamberlain,* 59 Ala. 431.

The defendant Samuel E. Chapman, husband and co-mortgagor with Martha E. Chapman, also demurred separately to the bill, assigning the same grounds of demurrer as those assigned by the administrator of his deceased wife. She had died intestate before the present bill was filed. As we have said, the lands conveyed by the mortgage are therein described as the separate estate of Mrs. Chapman. The conveyance is by both. It contains the words " grant, bargain, sell and convey," and in addition, the following express covenant of warranty: "We covenant to warrant and defend the title to the said land to the said Lockhart, his heirs or assigns, against the lawful claims of all persons." Mrs. Chapman having died intestate, soon after the execution of the mortgage, Samuel E. Chapman, her surviving husband, succeeded to a life-estate in her lands. Does that life-estate pass by the covenants in the mortgage?

It is settled in this State that if one, having at the time no title, convey lands by warranty—even the warranty which the law implies from the employment of the words grant, bargain, sell or convey—and afterwards acquire title, such title will enure and pass *eo instanti* to his vendee. This, by a species of estoppel.—*Stewart v. Anderson,* 10 Ala. 504; *McGee v. Eustis,* 5 Stew. & Por. 426; *Kennedy v. McCartney,* 4 Por. 141; *Carter v. Doe, ex dem. Chaudron,* 21 Ala. 72, 91. In the case of *Blakeslee v. Mobile Life Insurance Co.* 57 Ala. 205, there was an equitable life estate in the wife, remainder in fee to her children. A mortgage on the lands was executed, in which husband, wife and their two children joined; one of the children adult, and the other a minor. The mortgage was made to secure a debt of the husband, and contained the words " grant, bargain and sell." The minor child, grantor, died, leaving his adult sister, co-mortgagor, his sole heir-at-law. The question was, whether this interest, which descended from the minor to his adult sister, passed by the implied covenants in her mortgage. We held that it did. Our language was, " admitting the invalidity of the mortgage by the minor, his estate having descended to his sister as sole heir, the words used in the conveyance, under the statute, imply a covenant of warranty,

and estop her from asserting the title thus acquired against the mortgagee."

It is contended that the mortgage made by Mrs. Chapman was void, and that therefore the doctrine of estoppel does not apply. The mortgage was certainly inoperative as against Mrs. Chapman, and therefore no one could be estopped by force of the covenants she entered into. Such was the decision in *Kennedy v. McCartney, supra.* But that is not this case. While the mortgage had no effect whatever as a conveyance by Mrs. Chapman, Samuel E. Chapman was under no disability, and his covenants bind him. The case of *Wellborn v. Frisby,* 7 Jones' Law, 228, is not distinguishable from this. The opinion in that case is an able one by C. J. PEARSON. The principle of the decision will be readily comprehended from the following extract: "The deed of Wellborn and wife, as we have seen above, did not take effect as to her. Nor did it operate at the date of its execution in 1800, to pass any estate from Wellborn; for he then had no interest in the land. He was married 1794, and had issue born alive, but he did not become tenant by the *curtesy initiate* in the trust estate of his wife; for, in order to do that, there must be an actual seizin in regard to a legal estate, or something equivalent to it in regard to a trust, which was prevented by the adverse possession of Mary Gordon. So, the deed of Wellborn operated by way of estoppel, and afterwards, in 1814, when the term of five hundred years was assigned to Mrs. Wellborn, it passed to him, *jure mariti,* and then passed to the commissioners, or those claiming under them, ' to feed the estoppel,' in the quaint language of the books, and the legal effect was to vest the title in the commissioners, or those claiming under them, in the same way as if he had been the owner of the term when he executed the deed."—*Doe ex dem. v. Oliver,* 5 M. & R. 202; Smith's Leading Cases, 417, in margin; *Van Rensselaer v. Kearney,* 11 How. U. S. 297; Rawle on Cov. 405; 1 Bish. Mar. Women, § 596; Bigelow on Estoppel, 322; *Brown v. Spann,* 2 Mill. Const. Rep. 12; *Curtis v. Follett,* 15 Barb. 337; *Gill v. Fauntleroy,* 8 B. Mon. 177, 186; *Wildy v. Doe ex dem.,* 26 Miss. 35; *Beal v. Harmon,* 38 Mo. 435.

Samuel E. Chapman executed the note and mortgage conjointly with his wife, and we hold that his life estate passed by the covenants in his mortgage; and that, to that extent, the complainant is entitled to relief, according to the averments of the bill. The demurrer of Mrs. Chapman's administrator, and of her children, should have been sustained.

[Conoly v. Gayle.]

The demurrer of Samuel E. Chapman should have been overruled. Let the costs of this appeal be paid equally by appellant, Samuel E. Chapman and his sureties, and by Mrs. Abrahams.

BRICKELL, C. J., dissents on the question of the validity of the mortgage by Mrs. Chapman, holding that the same is a valid security as against her interest in the land.