## *In re* PARKER & MORRIS.

*(District Court, D. Oregon.* February 19, 1880.)

1. PAYMENT OF PRE-EXISTING DEBT BY NOTE.
   The note of a third person, given and received in payment of the debt of another, is a valid contract, and operates to extinguish or discharge the original debt, and a note given by a partner for a debt of the firm is, as to such debt, the note of a third person.

2. PAYMENT, WHEN ABSOLUTE—BURDEN OF PROOF.
   But to constitute an absolute payment of a pre-existing debt by a promissory note, there must be an agreement to receive it as such, and the burden of proof is upon the party alleging this fact.

3. BANKRUPTCY—UNLAWFUL PREFERENCE..

Where the creditor of a firm, knowing the firm to be insolvent, receives the note of an individual member of the firm in payment of the debt due to him by the firm, which note is secured by a mortgage upon the individual property of the maker of the note, he thereby secures an unlawful preference over both the individual and firm creditors, and such mortgage is invalid; and he could only prove his debt against the firm, and only for a moiety thereof.

4. ACTUAL FRAUD BY CREDITOR.

The actual fraud perpetrated by a creditor of an insolvent firm by receiving a preference contrary to the provisions of the bankruptcy act, which prevents him from proving his debt for more than a moiety thereof, must be by some act on his part inducing or coercing the debtor to make him a payment under circumstances constituting it an unlawful preference.

In Bankruptcy.

*Henry Ach*, for assignee.

*William Strong*, for defendant.

DEADY, D. J.   From the evidence taken before the register it appears that Allen and John Parker and A. B. Morris, in the early part of 1877, and some years prior thereto, were partners engaged in the warehouse business, and dealing in wheat, at Albany. Irvine stored wheat with them until the amount reached about 8,000 bushels, which the firm purchased in December, 1876, or January, 1877, at one dollar a bushel, on "short time." The firm and the individual members thereof were then insolvent, and had been so for some time.

In the latter part of February, John Parker and Morris transferred the business and warehouse to Allen, he to pay the debts of the firm as far and as fast as the assets would allow. About February 20, 1877, Irvine was informed of the transfer to Allen Parker, and assented to it, prior to which time he had been paid the sum due him by the firm, less $2.486.86.

On March 26, 1877, Irvine, being aware of the insolvency of the firm and that of the members thereof, demanded of Parker payment of the balance due him, or security therefor, stating "*that the company was not able to pay its debts*," but that if Parker would give him his note, secured by a mortgage upon his farm, he would wait a year for the money. Parker, being unable to pay the debt, gave Irvine his note for the same, payable in one year thereafter, with interest at 1 per centum per month, secured by a mortgage upon his farm of 247 acres in Linn county, and certain lots in the town of Albany, valued in the inventory in the aggregate at $7,500.

After this, in the latter part of May, an attempt to compromise with the creditors of the firm having failed, Morris proposed to put

the firm into bankruptcy, and Irvine endeavored to dissuade him from so doing until the limitation upon the inquiry as to the validity of his mortgage, four months from the date thereof, had expired; but Morris refused, saying that all the creditors must share alike, and filed his petition June 5th, following, upon which the firm and the individuals thereof were duly adjudged bankrupts.

Upon the hearing before the register the matter was certified here for decision.

Upon the argument the point was made that the note of Parker, being given in payment of the firm debt, a debt for which he was already liable, is invalid for want of consideration.

The authorities are not uniform upon this question, but the weight of them, as well as reason and considerations of convenience and utility, favor the rule that the note of a third person given and received in payment of the debt of another is a valid contract, and operates to extinguish or discharge the original debt, and that a note given by a partner for a debt of the firm is, as to such debt, the note of a third person.

In *Sheehy* v. *Mandeville*, 6 Cranch, 264, Chief Justice Marshall said:

" This principle appears to be well settled. The note of one of the parties or of a third person, may, by agreement, be received in payment. The doctrine of *nudum pactum* does not apply to such a case, for a man may, if such be his will, discharge his debtor without any consideration. But, if it did apply, there may be inducements to take a note from one partner liquidating and evidencing a claim on a firm which might be a sufficient consideration for discharging the firm." See, also, upon this point, *In re Ouimette*, 1 Sawy. 53; *Cumber* v. *Wayne*, and notes thereof, in 1 Smith, Lead. Cas. 453.

But to constitute an absolute payment of a pre-existing debt by a promissory note there must be an agreement to receive it as such, and the burden of proof is upon the party alleging this fact.

In *Harris* v. *Lindsay*, 4 Wash. C. C. 273, Mr. Justice Washington held that when there was an agreement between partners that one of them should retain the partnership effects and pay the debts, "no indulgence granted by a creditor to the paying partner, which falls short of an agreement, express or implied, or to take him as the debtor and to discharge the other partner," can have the effect to discharge the retiring partner.

The note being valid as the note of a third person received in payment of the debt of the firm, what effect has the bankrupt act upon the transaction? The giving of the note merely, while it increased the liabilities of Allen Parker, and by so much diminished

his ability to pay his individual creditors in full, did not, it seems to me, constitute a preference, as against such creditors.

The mere creation or acknowledgment of a note does not create a preference. A debt contracted by an insolvent person is entitled to payment out of his estate, the same as if he was solvent. Nothing less than payment, or a pledge to secure payment, amounts to a preference. By means of the note Parker became indebted to Irvine, but the latter was not thereby preferred over the other individual creditors of the former. Such creditors have a right to question the validity of this debt, because its allowance diminishes the fund to which they have a right to look for the satisfaction of their claims. But the note being valid—given upon a sufficient consideration—the claim, as an unsecured one, is good as against the individual creditors of Parker.

But is it so as against the creditors of the firm? The bankrupt act (sections 36 and 5121, Rev St.) provides that the joint estate of a partnership shall first be applied to the payment of the creditors of the partnership, and the separate estate of each partner to the payment of his separate creditors, and if there is any balance of either of said estates after satisfying the claims of the creditors first entitled to be paid thereout, it shall be added to the other estate for the benefit of creditors thereof.

Under this rule, if Parker's separate estate was more than sufficient to pay his individual creditors, excluding this claim of Irvine, the balance would be added to the joint estate for the benefit of the joint creditors. But if this debt is allowed against the separate estate of Parker it must be paid in full before any portion of such estate can be applied upon the debts of the firm. For illustration, suppose that the separate estate is just sufficient to pay the individual debts of Parker, including the claim of Irvine, and that the joint estate is only sufficient to pay the firm creditors 25 cents on the dollar: Irvine, by taking the note of Parker in payment of his claim upon the firm, has obtained a material preference over the other creditors of the firm, whose claims are quite as meritorious as his. By this means, if allowed, he secures the payment of his claim in full out of the surplus of the separate estate which rightfully belongs to the creditors of the joint estate.

But, in fact, the difference between the value of the joint and separate estates, compared with the debts proved against them, is greater than supposed.

The estates have all been reduced to cash, and neither of the partners, except Allen Parker, appears to have had any separate estate. According to the report of the register, made on the fourteenth instant, the debts proved against the joint estate amount to $18,419.26, and against the separate estate of Parker, including Irvine's claim, $7,583.25; and the assets of the joint estate are $849.19, and of the separate estate $5,949.65. Upon this basis the register estimates the dividends payable to the creditors from the joint estate at 4 per cent., and the separate estate at 75 per cent.

But if the sum of $3,425, the proceeds of the sale of the warehouse, which is claimed to be partnership property, is transferred from the separate to the joint estate, the former will then pay a dividend of 30 per cent., and the latter one of 22 per cent.; but even upon this basis, with the Irvine claim proved against the joint estate, it will only pay 19 per cent., while the separate one will pay 40 per cent.

Tested by the bankrupt act, the spirit and purpose of which is to prevent one creditor of an insolvent getting the advantage of another, this is clearly an unjust transaction, and, although no case has been found exactly in point, I am satisfied that it constitutes an unlawful preference, and is therefore invalid.

But it is claimed, on behalf of Irvine, that there was an absolute agreement to take Parker for the debt, and discharge the firm at the time the property and business we e turned over to Parker, and that the note subsequently given by him to Irvine was merely given in satisfaction of the obligation thus incurred by Parker to Irvine; and that at the date of this agreement Irvine had no reason to believe the firm was insolvent. For the sake of the argument it may be admitted that Irvine had no knowledge of the insolvency at this time. But the evidence does not satisfy my mind that there ever was any absolute agreement on the part of Parker to pay this debt until he gave his note for the same. Prior to that time there was, doubtless, an understanding that Parker was to pay the claim, but it was as well understood and expected that he was to make such payment as and for the firm, and from its assets only.

And this is evident from what Irvine said to Parker, as an excuse for demanding payment of his claim, either in money or the individual note and mortgage of the latter, "that the company was not able to pay its debts." If, as is claimed, Irvine already had Parker's individual obligation to pay the debt, why give as a reason for exacting the note and mortgage of Parker that the company was

v.11,no.4—26

not able to pay its debts? Because, up to that time he had looked to the firm as his debtor, and expected Parker to pay him as the agent of the firm and out of its assets, and not otherwise.

This proof of debt, as against the separate estate of Parker, must be rejected, and the creditor allowed to prove his original claim against the joint estate as though this note had not been given, unless he has forfeited his right to prove for more than a moiety thereof by reason of taking this preference.

Section 39 of the bankrupt act, as amended by section 12 of the act of June 22, 1874, (18 St. 180,) provides that a person receiving a payment or conveyance from an insolvent, contrary thereto, shall be liable for the same to the assignee; and such person, if a creditor, shall not, in cases of actual fraud on his part, be allowed to prove for more than a moiety of his debt, and this limitation on the proof of debts shall apply to cases of voluntary as well as involuntary bankruptcy.

The fraud here intended means something more, I suppose, than the passive receipt of payment from an insolvent debtor, with reason to believe him insolvent.

In my judgment, a creditor is not guilty of "actual fraud," within the meaning of this section, unless he does something to induce or coerce his insolvent debtor to make him a payment under circumstances constituting it an unlawful preference.

A creditor who obtains payment by this means, with reasonable cause to believe his debtor insolvent, is guilty of actual fraud, and can only prove for a moiety of his debt.

Irvine's case falls clearly within this category. Virtually, he constrained Parker to give him his individual note in payment of a firm debt, and for the reason given by himself at the time, that the firm was insolvent—unable to pay its debts.

Viewed in this light, the transaction constituted an unlawful preference, and a fraud upon the act, which Irvine, with full knowledge of the facts, actively participated in.

But, even assuming that the note of March 26th was given, not in payment of the firm debt, but in satisfaction of a prior absolute agreement by Parker to pay such debt, yet the taking of the mortgage to secure it was an unlawful preference, and a fraud upon the act as against the individual creditors of Parker; and therefore if this claim were otherwise a valid one against his separate estate, it could only be proved for a moiety thereof. The demanding and taking the mortgage, under the circumstances, constituted the "actual fraud" on

the creditor's part, and the subsequent waiver of the security, by proving the debt as an unsecured one when it was manifest that the mortgage could not be enforced, does not condone or excuse it. The statute is peremptory, and declares that such a creditor "shall not be allowed to prove for more than a moiety of his debt."

The taking of such security was also an unlawful preference as against the creditors of the firm, because, in effect, it was an appropriation of so much of the separate estate of Parker to the payment of Irvine's debt, to the prejudice and wrong of the other creditors of the firm, to whom any surplus of such estate, after payment of his individual debts, justly belonged.