(78 South. 47)

STATE v. MOBILE & O. R. CO.    (1 Div. 2.)

(Supreme Court of Alabama.    Feb. 14, 1918.)

1. PUBLIC LANDS ⚫61(11)—SWAMP LANDS—CONVEYANCE OF LAND ITSELF — VESTING OF AFTER-ACQUIRED TITLE.

A "Chardavoyne" patent, covering swamp lands issued by the state, conveyed not merely the state's interest in the land, but the land itself, and the word "grant," in Code 1907, § 3421, importing a covenant for quiet enjoyment against the grantor, his heirs, and assigns, where not limited by express words, vested in the patentee any title afterwards acquired by the state other than by adverse possession.

2. DEEDS ⚫116—TITLE BY ESTOPPEL—AFTER-ACQUIRED TITLE UNDER WARRANTY DEED.

A grantor's after-acquired title passes to his grantee under warranty deed; the rule being based on principles of morality.

Appeal from Circuit Court, Mobile County; Saffold Berney, Judge.

Bill by the State of Alabama against the Mobile & Ohio Railroad Company to quiet title. From a judgment for respondent, complainant appeals. Affirmed.

The title in controversy is to the N. E. ¼ of the S. W. ¼ and the S. ½ of the S. W. ¼, Sec. 26, Tp. 1 north, R. 4 west, in Mobile county. The respondent company claims title under a patent from the state of Alabama, and the cause was submitted on the following agreed state of facts and exhibits:

(1) The state of Alabama had no claim or right to the land above described until said land was patented to the state of Alabama, May 28, 1914, in lieu of swamp and overflow land improperly sold by the United States of America; (2) that until May 28, 1914, the title to said property was in the United States of America, and did not pass therefrom into the state of Alabama until the date of May 28, 1914; (3) the S. W. ¼ of Sec. 26, Tp. 1 north, R. 4 west, Mobile county, was never granted to the state of Alabama as swamp and overflow land, and was never swamp and overflow land; (4) at the time of the filing of the bill of complaint in this cause, there was no suit pending to enforce or test the validity of the claim of the Mobile & Ohio Railroad Company; (5) certified copy of patent from the United States of America to the state of Alabama is attached and marked Exhibit A; (6) instrument attached hereto, marked Exhibit B, is the instrument under which defendant entered possession, and had been in possession since 1872.

Exhibit A is an indemnity patent from the United States government to the state of Alabama, of date May 28, 1914, conveying the lands in suit, among others, pursuant to a selection made by the state under a special certificate issued by the Commissioner of the General Land Office on April 30, 1908, in accordance with the federal act of 1855-57.

Exhibit B is the patent issued by the state of Alabama to respondent, and was executed February 20, 1872, by Robert B. Lindsay, then Governor of Alabama, and countersigned by W. B. Chardavoyne, secretary. It recites:

"Whereas, the Mobile & Ohio Railroad Company, assignee of Tom Cooper, has deposited in the office of the secretary of state of Alabama the certificate of the receiver of the swamp and overflow lands of Alabama in and for the district of Mobile, whereby it appears that full payment has been made by said Tom Cooper, vendor, according to the provisions of the act of the General Assembly of Alabama, entitled 'An act for the sale of swamp and overflow lands of the state of Alabama, and for other purposes,' approved February 8, 1861, for the following tract of land, to wit: [Here follows description.] Now know ye, that the state of Alabama in consideration of the premises, and in conformity, etc., * * * have granted and conveyed and by these premises do grant and convey unto the said Mobile & Ohio Railroad Company, assignee as aforesaid, and to ——, —— heirs, the tract above described; to have and to hold same. * * *"

Sam Will John, of Selma, and Webb, McAlpin & Grove, of Mobile, for the State. S. R. Prince and William Buck Taylor, both of Mobile, for appellee.

SOMERVILLE, J. The formal validity and prima facie effect of state patents of the class here exhibited—known as the "Chardavoyne patents"—have been affirmed and fully settled by the decisions of this court. Jordan v. McClure Lumber Co., 170 Ala. 289, 54 South. 415; Turner v. Davis, 186 Ala. 77, 64 South. 958; State v. M. & O. R. R. Co., 190 Ala. 409, 67 South. 286.

The two propositions insisted upon for the state are: (1) That the state's patent to respondent is in fact but a quitclaim conveyance, and not effective to pass an after-acquired title; and (2) whether it would or would not so operate against an ordinary grantor, it does not bind the state, since sovereignty is not subject to any form of estoppel.

[1] This patent conveys not merely the grantor's interest in the land, but the land itself. It uses the word "grant," which by force of the statute (Code, § 3421) imports a covenant "for quiet enjoyment against the grantor, his heirs and assigns, unless limited by the express words of such conveyance." The effect of this covenant, as declared by an unbroken line of decisions, is to vest in the grantee any title afterwards acquired by the grantor, other than by adverse possession. Stewart v. Anderson, 10 Ala. 504, 509; Chapman v. Abrahams, 61 Ala. 108; Swann v. Gaston, 87 Ala. 569, 6 South. 386; Prewitt v. Ashford, 90 Ala. 294, 7 South. 831; N. E. M. S. Co. v. Fry, 143 Ala. 637, 42 South. 57, 111 Am. St. Rep. 62; Shannon v. Ogletree, 76 South. 865.[1] There is nothing in this patent to limit the statutory effect of the "grant." A dictum in the early case of Tillotson v. Doe, 5 Ala. 407, 413, 39 Am. Dec. 330, to the effect that a grant, with a warranty only against the grantor and his heirs, does not carry an after-acquired title, was based on the supposed rule at common law, and has been nullified by our statute and the decisions just cited.

It has been held in a few cases, which are cited in brief for appellant, that a patent from the state is in the nature of a quitclaim merely, and passes only such title as the state then has. Asher v. Howard, 122 Ky. 175, 91 S. W. 270; Baltimore v. McKim, 3 Bland (Md.) 453; Davis v. Moyles, 76 Vt. 25, 56 Atl. 174; 32 Cyc. 1093. Those cases, however, do not deal with patents using the word "grant" under the influence of a statute like ours, and they are therefore not in point.

So the real question in the case is simply whether the state's deed, containing the statutory word "grant," is controlled as to its operation and effect by section 3421 of the Code, as all other conveyances are.

"Generally speaking the doctrine of estoppel by deed applies against the state, and it will not be allowed to assert anything in derogation of its grant." 16 Cyc. 714.

"In North Carolina the rule has been laid down that the doctrine of estoppel by deed does not apply as against a state, the state being the sovereign, but the prevailing rule would seem to be that estoppel may arise from the express

[1] 200 Ala. 539.

grants of the state as well as in the case of individuals." 11 A. & E. Ency. Law (2d Ed.) 396.

This view was recognized by Chief Justice Brickell in State ex rel. Lott v. Brewer, 64 Ala. 287, 298, where he said:

"Estoppels against the state cannot be favored. They may arise from its express grants (Magee v. Hallett, 22 Ala. 699), but cannot arise from the laches of its officers; not on the notion of extraordinary prerogative, but upon a great public policy."

In his note to Flowers v. Logan County, 137 Am. St. Rep. 347, 356, discussing the general subject of estoppels as against the federal government and the states, Judge Freeman quotes from United States v. Willamette, etc., Co. (C. C.) 54 Fed. 807, as follows:

"While it is true that for the neglect or the illegal or unauthorized acts of its agents the government should not ordinarily be estopped to show the truth, there is good authority, based upon sound reasoning, to support the doctrine that where the government has acted by legislative enactment, resolution, or grant, or otherwise than through the unauthorized or illegal acts of its agents, and the parties dealing with the government have relied upon the same, and in good faith have so changed their relation to the subject-matter thereof that it would be inequitable to declare such action or grant illegal, the government will be estopped. Commonwealth v. Andre's Heirs, 3 Pick. [Mass.] 224; Cahn v. Barnes [C. C.] 7 Saw. 48, 5 Fed. 326; State of Indiana v. Milk [C. C.] 11 Biss. 197, 11 Fed. 397; Pengra v. Munz [C. C.] 29 Fed. 830; Woodruff v. Trapnall, 10 How. 190, 13 L. Ed. 383. No good reason can be offered why the United States, in dealing with their subjects, should be unaffected by considerations of morality and right which ordinarily bind the conscience. The defense of estoppel stands upon different ground from that of laches."

In U. S. v. Walker, 148 Fed. 1022, 79 C. C. A. 392, the court declared:

"The underlying principle of all the decisions is that, when the sovereign comes into court to assert a pecuniary demand against the citizen, the court has authority, and is under the duty, to withhold relief to the sovereign, except upon terms which do justice to the citizen or subject, as determined by the jurisprudence of the forum in like subject-matter between man and man. The acts or omissions of its officers, if they be authorized to bind the United States or to shape its course of conduct as to a particular transaction, and they have acted within the purview of their authority, may in a proper case work an estoppel against the government. * * * The principle that the sovereign is bound by his own acts, and those of his lawfully authorized agents within the purview of their authority, is a wholesome one, and requires the courts to visit an estoppel upon the sovereign in a proper case, where he invokes judicial action. While the application of the doctrine is attended with difficulty under our institutions, where sovereignty of the United States does not reside in any one person or collection of persons, that difficulty is no reason for rejecting the operation of the principle, if the facts of the particular case will admit of its application."

In People v. Stephens, 71 N. Y. 527, 549, the Supreme Court of New York gave very pointed expression to this idea, saying, per Rapallo, J.:

"The state, in all its contracts and dealings with individuals, must be adjudged and abide

by the rules which govern in determining the rights of private citizens contracting and dealing with each other. There is not one law for the sovereign and another for the subject; but, when the sovereign engages in business and the conduct of business enterprises, and contracts with individuals, although an action may not lie against the sovereign for a breach of the contract, whenever the contract, in any form, comes before the courts, the rights and obligations of the contracting parties must be adjusted upon the same principles as if both contracting parties were private persons."

And to the same effect is Carr v. State, 127 Ind. 204, 26 N. E. 778, 11 L. R. A. 370, 22 Am. St. Rep. 624.

In Chicago, etc., R. Co. v. Douglas County, 134 Wis. 197, 114 N. W. 511, 14 L. R. A. (N. S.) 1074, the rule was laid down quite clearly that whenever the state makes itself a party to an action, or to a contract or grant in its proprietary capacity, it is subject to the law of estoppel, as other parties litigant or other contracting parties.

Dealing particularly with grants of land by the state, the Supreme Court of Texas, in Fristoe v. Blum, 92 Tex. 80, 45 S. W. 998, stated the principle as follows:

"A clear understanding of the relation in which the state stands to the purchasers in these contracts will greatly facilitate a proper solution of the questions upon which this case depends. It is well settled that so long as the state is engaged in making or enforcing laws, or in the discharge of any other governmental function, it is to be regarded as a sovereign and has prerogatives which do not appertain to the individual citizen; but when it becomes a suitor in its own courts, or a party to a contract with a citizen, the same law applies to it as under like conditions governs the contracts of an individual."

[2] The rule that a grantor's after-acquired title passes to his grantee under a former warranty deed is based upon principles of the highest morality; principles which ought to be, and which we think are, as binding upon the state as upon its citizens; and we think that the rule must therefore be accorded full operation and effect to the conclusion of the title against the state of Alabama in the case before us.

It is urged that the executive department of the state was without authority to convey lands not in fact owned by the state, and that therefore this patent of 1872 was a void act upon which no right whatever can be predicated. This, however, is merely a begging of the question, and another mode of denying the doctrine of estoppel.

So far as authority was concerned, the test must be whether, if the lands had been then owned by the state, the grant by patent was authorized by law. There can be but one answer to this question.

Our conclusion is that the decree of the circuit court should be affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.