The defendants, Charles and Vicki Sprinkle, appeal from a judgment interpreting an easement and granting a permanent injunction; that judgment permitted the plaintiff, American Mobilephone Paging, Inc., to use a driveway for access to buildings that encroached on the Sprinkles' property. The trial court's judgment also required the plaintiff to remove trash from the Sprinkles' property and to remove a portico that encroached on the Sprinkles' property. The order also permits the Sprinkles to build a fence, with gates, on their property. On appeal, the Sprinkles argue that the trial court's judgment failed to meet the requirements of Alabama law for an injunction, and that the trial court erred in interpreting the easement so as to allow the plaintiff to enter and park vehicles on the Sprinkles' property. We disagree, and affirm.
Charles Sprinkle's stepfather and his mother, James and Mary Lee, owned land divided into parcels "A," "B," and "C," as shown by the map attached as an exhibit to this opinion. On parcel "A," the Lees owned and operated a telephone paging business. On parcel "B" were a tower and a concrete equipment building used in the paging business. On January 16, 1981, the Lees conveyed all of parcel "C," except a 9' by 30' portion on which was a building that housed a generator, to Charles Sprinkle. On October 1, 1985, the Lees sold their business and parcels "A" and "B" to Callpage, Inc., a predecessor to the plaintiff, American Mobilephone Paging, Inc. (hereinafter "American"). A week after the sale, a survey determined that the service shop, storage building, and generator building — all located primarily on parcel "B" — encroached on parcel "C." Therefore, Callpage requested that the Lees have the defendants execute an easement allowing them certain use of lot "C." The following easement was thereafter executed by the defendants:
 [An easement] for the purpose of maintaining existing guy wires on and over said land and buildings which are located on adjacent property and which encroach on said land, and this easement shall be for the purpose of using and maintaining said guy wires and existing buildings, and shall be perpetual, terminating only upon removal of said existing guy wires and buildings. [Emphasis added.]
This easement, which was executed on March 29, 1983, granted to Callpage an easement over the portion of parcel "C" owned by the Sprinkles. The plaintiff claims that before 1988, a dirt driveway existed on parcel "C." The Sprinkles argue *Page 1355 
that a driveway did not exist. After the easement was granted, the plaintiff put shells on the area where it claimed a dirt driveway existed, added a portico on the service shop located on parcel "C," placed a second generator in the generator building, changed the interior of the service shop, and, after it had filed suit, placed plywood sheets on the north side of the generator building (the parcel "C" side) in order to protect the generators from weather damage.
 I.
The Sprinkles first argue that the trial court's order did not comply with the necessary requirements of an injunction. They specifically argue that the order is faulty because it does not contain the reasons for the issuance of the injunction, is not specific, and does not recite that irreparable injury would result to American if the injunction were not issued. See Rule 65(d)(2), A.R.Civ.P. Rule 65(d)(2) states:
 Every order granting an injunction shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise.
In its order "correcting and superseding final judgment heretofore entered," the trial court stated specifically the reasons for the issuance of the order and the acts permitted to the parties and thus satisfied Rule 65(d)(2). That corrected order reads:
 2. That Plaintiff shall refrain from parking or allowing cars to be parked on "Parcel C" with the following exceptions:
 a) Plaintiff or Plaintiff's customers or clients may temporarily park on the area on the attached Exhibit labeled as "Shelled Parking" and which is adjacent to the West door of the building described as "Service Shop" on Exhibit 1, while in the process of actively servicing, installing, or repairing equipment in or on said vehicles:
 3. Plaintiff, [its] employees or customers or clients may use the "Shelled Driveway" on the North side of the areas denominated as "Storage," "Generator Area" and "Paved Parking" for the purpose of exiting "Parcel C" or maintenance of the affected buildings.
. . . .
 5. Defendants may construct a fence as shown on Exhibit 1 [that Exhibit 1 is the map included as an appendix to this opinion] and in construction of said fence, Defendants shall install their fence on the edge of the existing shells but no closer than twelve [feet] (12') from the north side of the buildings or areas denominated as "Storage," "Generator Area" and "Paved Parking." If said fence is constructed, Defendants shall install a gate with a minimum width of twelve (12') feet in the approximate location as indicated on Exhibit 1. Said gate shall remain unlocked at all times so as to allow Plaintiff access to "Parcel C" in order to service and maintain existing guy wires.
 6. Plaintiff is using and has been using the interior of the buildings denominated on Exhibit 1 as "Service shop," "Storage," "Generator Area," and "Equipment Building" in conformance with the easement granted from the Defendants to the Plaintiff on the 29th day of March, 1983, and may continue to make such reasonable modifications to the interior of the buildings as [are] necessary to conduct Plaintiff's business in a businesslike manner.
 7. Plaintiff has placed several sheets of plywood on the north side of the building denominated as "Generator Area" on the attached Exhibit 1. The purpose of these sheets of plywood is to prevent rainwater from blowing onto the generators and these sheets of plywood shall be allowed to remain as they do not constitute an expansion or enlargement of the easement granted by Defendants to Plaintiff on March 29, 1983. *Page 1356 
From the reading of the order, it is clear that the trial court complied with requirements of Rule 65(d)(2).
 II.
The Sprinkles next argue that the trial court erred in interpreting the easement so as to allow American to use part of parcel "C" as a driveway and a place for its customers to park vehicles. They assert that because the easement document said nothing about the use of part of parcel "C" as a "drivethrough" and for parking, to allow such use would be improper. They argue that American, by its actions in changing the interior of the service shop and the West access door, was attempting to enlarge the easement. Sprinkle argues that American could have placed the access door of the service shop on another side of the building, thus preventing the need to use parcel "C" for parking.
In Alabama, generally, in a doubtful case, the grant of an easement will be construed in favor of the grantee. Cobb v.Allen, 460 So.2d 1261 (Ala. 1984).
 (1) The grant must be construed in the light of the situation of the property and the surrounding circumstances, in order to ascertain and give effect to the intention of the parties. (2) If the language of the grant is clear and free from doubt, such language is not the subject of interpretation, and no resort to extrinsic facts and circumstances may be made to modify the clear terms of the grant. (3) The past behavior of the parties in connection with the use of the right of way may be regarded as a practical construction of the use of the way. (4) In case of doubt, construction should be in favor of the grantee. [Emphasis added.]
Annot., 3 A.L.R.3d 1256, 1259 (1965), "Easements — Private Way — Reasonable Use", cited in Cobb v.Allen, supra. In the present case, the parties disagree over the meaning of the terms "use" and "maintain." The terms of an easement, when doubtful, are construed more strongly against the party who prepared the instrument setting forth the easement, and if two reasonable interpretations are present, the courts should favor the one that is the most unfavorable to the maker. Birmingham Trust Nat. Bank v. Midfield Park,Inc., 295 Ala. 136, 325 So.2d 133 (1976).
Stiegler, before the Lees sold their business, worked for a paging business. He testified that, before American's predecessor, Callpage, purchased the property, customers and service vehicles would drive around the building on the dirt driveway. He said that at the time of the sale, the paved parking lot was already in existence and the shells were put down solely to prevent ruts from forming in the driveway and to prevent the area from becoming muddy. Based upon this testimony, it is clear that the plaintiff's use of the easement is consistent with the use of the property prior to the sale of the property. Furthermore, evidence indicated that the purpose of the easement was to enable Callpage to use the property for business in a manner similar to the way the Lees had used it. Although the plaintiff could have placed a door on another side of the building so as to avoid some of the parking on parcel "C," it was not required to do so. Therefore, we find no error in the trial court's determination that the intent of the easement was for Callpage (or its successor, American) and its customers to be able to use the driveway in order to maintain and use the buildings and guy wires in the operation of its business.
 III.
Charles Sprinkle argues that at the time of the easement he did not own the 9' by 30' portion of the building that housed the generator. The Sprinkles executed the easement on March 29, 1983, and the Lees deeded this portion of the property to Sprinkle on November 21, 1985. The majority of the building is on parcel "B," with only the 9' by 30' portion being on parcel "C." However, the Sprinkles are still bound by the easement under the after-acquired property doctrine. Considering the intent of the parties, it appears that the Sprinkles meant for the easement to apply to that portion of the building located on parcel "C," because the generator was *Page 1357 
housed in that part of the building. The generator was necessary for back-up power for the Lees and is necessary for American to operate its business. "The rule that a grantor's after-acquired title passes to his grantee under a former warranty deed is based upon principles of the highest morality. . . ." Kelley v. Kelley 435 So.2d 214, 218 (Ala. 1983), quoting State v. Mobile O.R. Co., 201 Ala. 271,78 So. 47 (1918). Therefore, although the easement does not specifically mention that area of parcel "C" on which the building is located, by applying the after-acquired property doctrine, the Sprinkles' interest would be subject to the plaintiff's easement. This in no way expands the easement, because before the conveyance the property was being used to house the generator, and it continued to be so used afterwards; the use is consistent with the terms and restrictions of the easement.
From our review of the record, we find no error by the trial court in its construction of the easement and in its grant of an injunction. The "[a]ppellants have certainly not overcome the strong presumption in favor of the correctness of the trial court's decision which we are required to indulge in a case presented ore tenus." Cobb v. Allen, 460 So.2d at 1264. Therefore, the judgment of the trial court is due to be affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, SHORES and STEAGALL, JJ., concur. *Page 1358 
[EDITORS' NOTE: The figure IS ELECTRONICALLY NON-TRANSFERRABLE.] *Page 1359