## APPOLLONIA PHILLIPPI, RESPONDENT, *v.* ANANIAS THOMPSON, APPELLANT.

EJECTMENT—TITLE MUST BE PLEADED.—In an action of ejectment, where the defendant merely traverses the allegations in the complaint, and does not set up title in himself or another, the defendant will be confined in his testimony to such facts only as tend to show the weakness of the plaintiff's title.

IDEM—EVIDENCE.—Where the plaintiff in his evidence produces a confirmatory deed to establish his title, in which is recited other deeds by their dates, through which plaintiff deraigns title, it is competent for defendant to offer in evidence and produce these deeds recited to show the boundaries of the land claimed by the plaintiff.

COLOR OF TITLE—PRESUMPTION.—A party entering land under color of title is presumed to enter and occupy according to his title.

APPEAL from Multnomah County.

This is an action of ejectment. The respondent alleges that she is the owner and is entitled to the possession of the premises described, and prays for their possession. The appellant denies the allegations of the complaint. The jury returned a verdict in the respondent's favor for a part of the premises described. The respondent had judgment upon this verdict, and the appellant appeals.

On the trial, the respondent offered in evidence the United States patent to the Couch claim, which assigns the south half of the claim to Caroline Couch. It was also shown that the property in controversy is included in the

south half of said claim. She also introduced in evidence a confirmatory deed from the widow and heirs-at-law of Couch to her, dated November 12, 1872, conveying lots 6 and 7 in fractional block 30, Couch's addition. She further offered in evidence testimony showing that she and her husband, from whom she derives title, had, since the year 1858, claimed possession, and had been in actual possession of all that portion of said lots 6 and 7 that lies north of an old fence, which was constructed by one Ebinger, prior to 1858. The appellant then moved for a nonsuit, which motion was denied.

The appellant then offered to introduce in evidence certain deeds, for the purpose of showing that the respondent held the land in dispute under a paper title, in which the same was described by definite boundaries, the introduction of which was disallowed. He also offered to introduce in evidence certain deeds to himself and to persons from whom he derives title, for the purpose of showing the boundary line between the lands of himself and the respondent, the introduction of which was allowed by the court. The appellant asked that the following instructions be given to the jury: "That if the possession of the land in dispute was originally taken under a paper title, then the presumption of law is, that they hold according to the description in their deeds; this presumption will prevail until it is overcome by proof of a change in manner of holding:" which instruction the court refused to give, upon the ground that there was no testimony on that point.

The errors assigned are as follows: 1. The court erred in admitting the confirmatory deed from the widow and heirs-at-law of John H. Couch to the plaintiff, for lots Nos. 6 and 7 in fractional block No. 30, Couch's addition, etc., and dated November 12, 1872, Exhibit "A" of the bill of exceptions; 2. In not allowing defendant's motion for a nonsuit; 3. In not admitting the deeds offered by defendant to prove that plaintiff held the land in dispute under a paper title, in which the land was described with certain specified boundaries; 4. In not admitting in evidence the deeds offered by defendant, for the purpose of showing the true

boundary line between the lands of plaintiff and defendant; 5. In not giving to the jury the instruction presented by defendant, and fully set forth in his bill of exceptions.

*Wm. Strong & Sons,* for appellant:

The deed offered in evidence by the respondent shows by its recitals that she held the land under a paper title, and concludes her from otherwise showing title to the property. A party who traces title through a regularly executed conveyance is concluded by its recitals. (3 Washburn on Real Property, 3d ed. 94, sec. 24; *Scott* v. *Douglas*, 7 Ohio, 227; 5 Id. 194; *Carver* v. *Jackson*, 4 Pet. 1; Id. 85–87.) In order to create title by prescription, there must be: 1. An actual occupancy, clear, definite, positive, and notorious; 2. It must be continued, adverse, and exclusive during the whole period prescribed by the statute; 3. It must be with an intention to claim title to the land occupied. (*Cook* v. *Babcock*, 11 Cush. 206; *Doswell* v. *De La Lanza*, 20 How. 32; *Grant* v. *Fowler*, 39 N. H. 101.

To give possession, the requisite characteristics of being visible, notorious, distinct, and definite in its extent, the ouster, in the first place, must be of such notoriety that the owner may be presumed to have notice of it, and of its extent. (3 Washb. on Real Property, 127, sec. 22, and authorities there cited.) The entry upon the lands must be made with an intention to dispossess the owner, otherwise the act would be a mere trespass. (4 Kent's Com. 488; 2 Smith's Leading Cases, 6 Am. ed. 637; note; *Broadstreet* v. *Huntington*, 5 Pet. 401, 439.) Mere possession, without a claim of right, gives no title, however long the same may be continued. (*Grube* v. *Wells*, 34 Iowa, 148; *La Frambois* v. *Jackson*, 8 Cowen, 588, 603; *Adams* v. *Guice*, 30 Miss. 397.)

A party inclosing and occupying by mistake for the period of limitation more land than his deed called for, will not operate as a bar to the claim of the true owner. The possession is not deemed adverse. (*Howard* v. *Reedy*, 29 Ga. 152; 34 Iowa, 148; *Dow* v. *McKenney*, 64 Me. 138.) When two adjoining proprietors of land, who are ignorant of the true boundary line between their respective lands, fix a line

with an agreement that each shall possess to that line until the true boundary is ascertained, and the true boundary, when ascertained, leaves one in possession of a portion of the other's land, this possession is not adverse. (3 Washb. on Real Property, 491; *Irvine* v. *Adler*, 44 Cal. 559; 34 Iowa, 148.) Evidence of a fence built merely for convenience, in working a farm, and not for the purpose of marking boundaries according to title, is of no weight in determining acts of possession. (*Soule* v. *Barlow*, 49 Vt. 329.) The testimony does not prove title by prescription to the land in controversy; if our position is correct, it follows that the court committed error in not granting the motion of defendant for a non-suit.

The court erred in not allowing the offered proofs showing plaintiff held under paper title; and in not admitting the deeds offered to show the true boundary line. Every presumption is in favor of possession continuing in the same subordination to a title, where it is once shown to exist. (*Hood* v. *Hood*, 2 Grant's Cas., Penn. 229.) A party's possession, if he enter under color of title, by deed, decree, etc., is often referred to the description of the premises in such deed or written instrument. (*Bell* v. *Longworth*, 6 Ind. 273; *Scales* v. *Cechill*, 3 Head. 436.) When the acts of disseisin are equivocal in their nature, the presumption always is that it is in accordance with, and not in hostility to the title of the true owner. (*Pipher* v. *Lodge*, 16 Serg. & R., 229, 231; *Smith* v. *Burtis*, 6 Johns. 218; *Jackson* v. *Sharp*, 9 Id. 163.) When two persons are in possession at the same time, under different claims of right, he has the seisin in whom is the true title. Both can not be seised, and the seisin consequently follows the title. (*Barr* v. *Gratz*, 4 Wheat. 213; Kent's Com. 482; *Codman* v. *Winslow*, 10 Mass. 146, 151.)

The court erred in not giving the instruction asked for by defendant. If a person enter on land having a title and right of entry, his entry and possession are presumed to be in conformity to his title. (*Means* v. *Welles*, 12 Met. 356; *Tappan* v. *Tappan*, 11 Fost. 41; *Wilson* v. *Williams*, 52 Miss. 487; *Loport* v. *Todd*, 3 Vroom, N. J. 124.)

*S. W. Rice and W. W. Thayer*, for respondent:

The patent and the confirmatory deed form a direct chain of title from the United States to the respondent; and as the appellant has not pleaded any title in himself, he can not object to the respondent's claiming the property under any title she may have. The only objection he could bring, would be that it did not show that the respondent had any title. This confirmatory deed was duly executed and acknowledged, and is entitled to be admitted in evidence. (Civil Code, 518, sec. 22.) As to the second assignment of error: A direct legal chain of title had been proven, and also an uninterrupted adverse possession of the premises for more than twenty years, which is a presumption that the premises had been held pursuant to a written conveyance. (Gen. Laws of Oregon, 262, secs. 766–68.) Therefore a nonsuit was properly denied.

The deeds offered to be introduced must be presumed to have included a less area than the premises which the respondent had occupied adversely for more than twenty years, or the appellant would not have offered to introduce them in evidence, unless he wished to prove the respondent's case. But the respondent had been in adverse possession of the whole tract for more than twenty years, and the presumption was that she had a written conveyance to all the lands she had so occupied. (Gen. Laws of Oregon, p. 262, sec. 766–38.) The bill of exceptions says that these deeds were offered in evidence for the purpose of showing that the respondent held the land in dispute under a paper title. The appellant ought not to complain because the respondent declined to allow him to prove her case.

As to the fourth assignment of error: These deeds, if they would show anything, would be proving title in the appellant himself, which is not permissible, as he has not pleaded any such title. (Gen. Laws of Oregon, p. 176, sec. 316.)

By the Court, Boise, J.:

In this case it was incumbent on the plaintiff to show

that she had a legal estate in the property and a present right to the possession. (Civ. Code, sec. 313.) This she attempted to do: 1. By producing the patent of the heirs of Couch, the original proprietor; and a confirmatory deed from her to plaintiff, to which we see no objection; 2. By producing evidence tending to prove that she, and those under whom she claimed, had been in adverse possession for twenty years; and we think the evidence was sufficient to make a *prima facie* case in her favor; and, therefore, the motion for a warrant was properly refused.

The next error is: That "the court erred in not admitting the deeds offered by defendant to prove that plaintiff held the land in dispute under a paper title, in which the land was described with certain specific boundaries." The defendant having simply denied the bill and right to possession of the plaintiff, and not having pleaded in his answer either that he was the owner, or that the title was in a third person, the evidence which the defendant could produce was restricted to a very narrow issue, and was very much more limited than in an action of ejectment at common law, for our statute has provided (p. 179, sec. 316) that " the defendant shall not be allowed to give in evidence any estate in himself or another in the property,    *    *    * unless the same be pleaded in his answer." At common law, under the general issue (which is the issue in this case), the defendant could prove title in himself or another, so that most of the rules of law concerning evidence for the defense in ejectment, which have been established, and which are found in works on evidence and ejectment, are not applicable under our statute.   We think, however, that the defendant was entitled to offer any evidence which had a tendency to weaken the claim of title under which the plaintiff claimed, for as the plaintiff must make out a *prima facie* case, the defendant might show flaws in that title. The confirmatory deed recites that this deed was to confirm a legal or equitable title, which the plaintiff held in possession " by mere conveyances from R. B. Wilson, by deed or instrument in writing, dated March 1, 1854, and recorded

28

in the book of records, transferred from Washington county, p. 30."

The defendant offered these mesne conveyances in evidence to show that plaintiff's title and right of possession under them was confined to the north-west quarter of said block 30, and claimed that the boundaries of the north-west quarter differed from the boundaries of the land contained in lots 6 and 7, in block 30, which was the land described in the confirmatory deed. These deeds offered in evidence tended to show that Mrs. Couch, the patentee, had sold all of block 30 to R. B. Wilson, March 1, 1854, and that plaintiff, prior to the confirmatory deed, had acquired a paper title to the north-west quarter of block 30, and as Mrs. Couch had, in 1854, parted with all her title to block 30, her confirmatory deed gave nothing to plaintiff; that is, provided the deed of March 1, 1854, was in proper form, for Mrs. Couch and others could not grant to plaintiff land she did not own by reason of its having been before conveyed, and we must presume the deeds were in proper form, for no objection was made to their form, the objections being only to their materiality and relevancy as evidence. We think, also, that these deeds might be material to limit and determine the boundaries of the land the plaintiff took under her paper title which she had offered in evidence, even if they only conveyed an equity, for these deeds constituted the paper title on which she entered the premises, and were the consideration of the confirmatory deed relied on to recover, for we must suppose that she relied on her paper title as well as on her evidence of possession, as both the evidence of the paper title and the possession were submitted to the jury to support her right to recover.

These deeds had a tendency to show that her right under them was only to the north-west quarter of block 30, and did explain and limit the land intended to be conveyed in the confirmatory deed, for where a confirmatory deed refers to the deed which it is intended to confirm, and there is a difference in description between the confirmatory deed and the deed to be confirmed, the description in the latter should prevail, for the reason that it describes the land

which was originally sold, and for which the consideration was paid, unless it appear that the confirmatory deed was to correct an error in description, which is not the case here, the confirmatory deed being to remedy errors of form, or "informalities." This evidence tended only to show to the jury the boundaries of the plaintiff's land, and should have been admitted for that purpose, and she having by the recital in her confirmatory deed made them a part of her muniments of title, could not properly refuse to be controlled by their contents. We think, therefore, that there was error in not allowing these deeds to be given in evidence.

It is claimed that the respondent having shown possession for twenty years, raised a presumption of a written conveyance of the land in dispute. Whether the evidence on this point showed an adverse possession for twenty years, of the strip of land in dispute, which was less than one foot in width, and on the boundary of the plaintiff's land, was a question for the jury. Any evidence by the defendant tending to show that the plaintiff had not occupied said land, or had not claimed it as hers, during the twenty years, was competent; and on this question of adverse possession, we think the defendant might show under what claim plaintiff entered it, and to what boundary the original possession extended; and if she entered under a deed, the deed would be evidence of the extent of the possession claimed under it, and in this case, the plaintiff in her testimony says that she was not in possession of the whole of lots numbers 6 and 7, of said fractional block 30. That she now resides on the north-west quarter of said block. That her husband John Phillippi, bought said place in the year 1858, and that she is his widow, and is the owner of the land at the present time. That ever since her husband bought said land, an old fence built by one Ebinger, a former owner of said land, has stood between the land claimed by plaintiff and defendant in this action, and that she claimed all the land on the north side of said old fence, and had been in fact in possession of the same since the said purchase by her husband. This testimony refers to the purchase of this land

from Ebinger, and as this purchase was by deed, the possession taken under the deed would only extend to the .boundaries named in the deed; and if Ebinger had fenced in land not included in the deed, such land would not pass by the deed, and such deed would be evidence of the original extent of the possession under it, and was proper evidence in this case to show what land John Phillippi took possession of. If he afterwards or immediately took possession of other land, that could be proved by acts of possession on the land itself, and not by acts of possession under the deed which excludes it.

To be more explicit, she claims that her husband purchased this land of Ebinger, and that this fence was its boundary; this purchase being by deed, which describes the land as the north-west quarter of block 30. This fence is not a monument, and whether or not it was on the boundary must be determined by the deed and the parol evidence, and if the strip of land in controversy has become hers by adverse possession, she must have claimed and occupied it otherwise than under the deed, for when we settle her claim under the deed, its extent must be determined by the deed, and where a person enters under a deed, he will be presumed to hold under it and to the boundaries fixed in it, until the contrary is shown. As is said in *Tappan* v. *Tappan*, 11 Foster, 41, "A party entering on land under color of title, is presumed to enter and occupy according to his title." (See also *Meares* v. *Wells*, 12 Met. 356; *Wilson* v. *Williams*, 52 Miss. 487.)

For the reasons assigned, we think the judgment of the circuit court should be reversed, and a new trial ordered.