### CAHN v. BARNES.

*(Circuit Court, D. Oregon. January 17, 1881.)*

1. PATENT—CONTRADICTION OF BY ORAL EVIDENCE.—On March 12, 1860, (12 St. 3,) congress granted the swamp and overflowed lands in Oregon to the state, to be identified and patented by the secretary of the interior. On July 5, 1866, (14 St. 89,) congress granted to the state, to aid in the construction of a wagon road from Albany to the eastern line thereof, three sections per mile of the public lands, to be selected within six miles of said road, as the same might be located, and on June 18, 1874, (18 St. 80,) authorized patents to issue therefor as fast as the same should be selected and certified; and on June 19, 1876, a patent was issued under said wagon-road grant to the state or its assigns, for the premises in controversy. *Held*, that the patent was conclusive evidence at law that the premises were included in the wagon-road grant, and were therefore not swamp land, the latter conclusion being a necessary element of the former.

2. ESTOPPEL.—In 1871 the premises in controversy were selected and approved by the land department as a part of the wagon-road grant without objection on the part of the state, or any attempt to show that they were swamp, and in 1872 the state sold the same to the defendant as swamp, and the defendant is in possession without having paid the purchase money. *Held,* that the defendant has no title, and cannot prove title in the state under the swamp-land grant, because the state is estopped to deny that the premises are within the wagon-road grant.

Action to recover possession of real property.

*E. C. Bronaugh, John W. Whalley,* and *M. W. Fechheimer,* for plaintiff.

*W. Lair Hill,* for defendant.

DEADY, D. J. This action is brought by a citizen of California against a citizen of Oregon, to recover the possession of section 3 of township 15 S., of range 16 E. of the Wallamet meridian. The plaintiff claims to be the owner of the premises, and entitled to the possession thereof as the successor in interest of the state of Oregon. The defendant only defends for the N. E. $\frac{1}{4}$ of the section, and pleads title thereto in the state of Oregon under the swamp-land act of March 12, 1860, (12 St. 3,) and that he is in possession under the state, in pursuance of an executory contract of purchase therefrom, under the act of October 26, 1870, (Sess. Laws 54,) providing for the selection and sale of said swamp lands. The plaintiff denies that the premises are swamp land in fact, and alleges that the secretary of the interior has decided otherwise; and also that the state, by accepting a patent from the United States of the land in controversy as wagon-road land, is estopped now to assert that the land is swamp, which estoppel binds the defendant, the state's vendee. The case was tried by the court without the intervention of a jury. On the trial a stipulation was read containing the evidence in the case, except as to the question of whether the premises are in fact swamp land or not, and, as to that, oral evidence was received subject to the objection of the plaintiff for incompetency.

The facts of the case are as follows: On July 5, 1866, congress, "to aid in the construction of a military wagon

road" from Albany, via Canyon City, through the Cascade mountains to the eastern boundary of the state, granted to the state the "alternate sections of the public lands designated by odd numbers, three sections per mile, to be selected within six miles of said road." 14 St. 89.

The act making the grant contains a provision that not exceeding 30 sections of the grant "shall be disposed of"—sold—when and as fast as the governor of the state "shall certify to the secretary of the interior that any 10 continuous miles" of the road are completed. By an act of July 15, 1870, (16 St. 363,) congress changed the line of the road from Canyon City to Camp Harney; and by the act of June 18, 1874, (18 St. 80,) it was provided in effect that whenever it appeared from "the certificate of the governor," as in the act of July 5, 1866, provided, that said road was "constructed and completed," a formal patent should issue to the state, or any corporation being its assignee, "for said lands," "as fast as the same shall, under said grant, be selected and certified."

By the act of October 24, 1866, (Sess. Laws, 58,) the state transferred the grant, "for the purposes and upon the conditions and limitations" contained in the act making the same, to the Wallamet Valley & Cascade Mountain Wagon Road Company—a corporation duly organized under the laws of Oregon in 1864.

On August 19, 1871, said corporation conveyed the premises in controversy to H. K. W. Clarke, who, on September 1, 1871, duly conveyed the same to the plaintiff. That the premises are included in a list of lands numbered 1, and described as "lands granted to the state of Oregon by the act" of July 5, 1866, aforesaid, to aid in the construction of said military wagon road, and on May 2, 1871, the commissioner of the general land-office recommended said list for approval as being the lands to which the state was entitled under the grant of July 5, 1866, and therein certified "that it is shown by the certificates on file of the governor of Oregon, bearing date April 1, 1868, September 8, 1870, and January 9, 1871, that said corporation had completed its road from Albany to the 36.8 section, distance 368 miles, in conformity with the

provisions of said act of congress of July 5, 1866, and the amendatory act of July 15, 1870;" which list was, on May 4, 1871, approved by the secretary of the interior, "subject to any valid interfering right which may have existed at the date of selection of said lands;" that on June 19, 1876, the United States, by its proper officers, issued a patent to the state "for the use and benefit of said corporation and its assigns," purporting to grant the lands in controversy, and transmitted it to the governor of Oregon, who "received" the same, "and caused it to be recorded in the counties wherein the lands therein described are situated."

The act of October 26, 1870, *supra,* entitled "An act providing for the selection and sale of the swamp and overflowed lands belonging to the state of Oregon," by operation of the swamp-land act of March 12, 1860, (12 St. 3,) extending over Oregon the Arkansas swamp-land act of September 28, 1850, provided for the selection of such lands by persons employed by the state, and the sale of the same in unlimited quantities, at not less than one dollar per acre, the purchaser to pay 20 per cent. of the purchase price within 90 days after the selection is completed, and the balance upon proof that the land "has been drained or otherwise made fit for cultivation;" but if such final payment and proof of reclamation are not made within 10 years from the time of the first payment, the land is to revert to the state; and it is declared in the act "that all swamp land which has been successfully cultivated in either grass, the cereals, or vegetables, for three years, shall be considered as fully reclaimed." The premises are situate to the east of the Cascade mountains, and on the north bank of the Ochoco creek. The defendant went into that country from the Wallamet valley with stock, when it was unsettled, in the fall of 1867, and selected the place in controversy because it was good meadow land, and lived thereon seven or eight years, during which time he cultivated a garden of less than an acre in extent, and annually cut the wild grass from about 100 acres of it, without, it appears, making any claim to the premises under any act of

congress until in 1872, as hereinafter stated. The United
States surveys were not extended over the premises until
October, 1869, but no notice thereof was given to the gov-
ernor by the secretary of the interior until sometime in 1872,
in which year the state selected the premises as swamp and
overflowed lands, and on September 18, 1872, the defendant
purchased the same therefrom under the act of October 26,
1870, *supra*, and paid thereon 20 per cent. of the purchase
price, but has not yet paid the balance on or done anything
to reclaim the same, except to cut an inconsiderable ditch
thereon since the commencement of this litigation; that the
land if thoroughly drained would be thereby injured and
depreciated in value; and no lists or plats of swamp lands
embracing the premises in controversy have been made or
filed or transmitted to the governor of this state by the secre-
tary of the interior.

The first and material question to be decided in this case
is whether the patent issued to the state under the grant of
July 5, 1866, for the premises in controversy, is conclusive
evidence in this action that they belong to the wagon-road
grant and not to the swamp-land one. The swamp-land
grant was a grant *in præsenti* of all the swamp and overflowed
lands in the state thereby made "unfit for cultivation," but
the determination of what lands come within this category,
and what do not, rests with the secretary of the interior, and
his decision is final, unless impeached for fraud or mistake.
*French* v. *Fyan*, 93 U. S. 170. The provision in section 2 of
the act of March 12, 1860, *supra*, which requires the lands
"already surveyed" to be selected within two years from the
adjournment of the next session of the legislature, and those
to be surveyed within two years from the adjournment of the
next session, after notice by the secretary of the interior to
the governor "that the surveys have been completed and con-
firmed," is not in the original swamp-land act. The effect
of it appears to be that it is the duty of the state to make the
selections in the first instance and submit them for approval
to the secretary, and that if this is not done within the term

prescribed the grant reverts. But, however that may be, the power to determine what land passes under the grant as being "wet and unfit for cultivation" still rests with the secretary.

The statutes of the United States provide that the secretary of the interior is charged with the supervision — final direction—of the public business relating to the public lands, and that the commissioner of the general land-office shall perform, under his direction, all the executive duties appertaining, among other things, to "the issuing of patents for all grants of land under the authority of the government," (sections 441, 453, Rev. St.;) and by section 2 of the swamp-land act it is made his especial duty to determine what lands are within its purview.

The wagon-road grant was a grant *in præsenti* also of the odd sections for six miles on either side of the road wherever it might be located between the *termini* named, which, so soon as the line of the road was designated, attached to such sections within the prescribed limits on either side of said line and took effect from the date thereof. *Shulenberg* v. *Harriman*, 21 Wall. 60. But the grant to the wagon road being subsequent in point of time to that of the swamp land, the former could not attach to any legal subdivision within the operation of the latter unless they had reverted to the United States for want of selection in due time, which could not have occurred in this case, as the surveys were not extended over the premises until 1869. And this is so from the very nature of the case, rather than from the effect of the clause in section 1 of the wagon-road grant, excepting from its operation "all lands heretofore reserved to the United States by act of congress or other competent authority,"—for the words "reserved to the United States" do not describe or include lands "sold or otherwise disposed of," as did the reservation in the railway grant cited by counsel from *Ry. Co.* v. *Fremont County,* 9 Wall. 94, but only Indian and military reservations and the like,—lands withdrawn from the public domain for some special use of the United States, and not lands already disposed of to states or others. It is as impossible that two grants should

have effect upon the same land, as that two bodies should occupy the same space, and therefore the grant that is prior in point of time and has not reverted to the grantor excludes or repels the other.

In *French* v. *Fyan, supra,* the supreme court held that a patent issued under the swamp-land act of 1850 cannot be impeached in an action at law by showing that the land which it conveys was not in fact swamp and overflowed land. Upon the question of admitting oral evidence to contradict the patent in this respect, Mr. Justice Miller, in delivering the opinion of the court, after citing the case of *Johnson* v. *Towsley,* 13 Wall. 72, to the effect that the action of the land-office in issuing a patent is conclusive upon the legal title, subject, however, to the power of a court of equity, in certain cases, to correct or set it aside for fraud or mistake, says: "We see nothing in the case before us to take it out of the operation of that rule; and we are of the opinion that, in this action at law, it would be a departure from sound principle, and contrary to well-considered judgments in this court, and in others of high authority, to permit the validity of the patent to the state to be subjected to the test of the verdict of a jury on such oral testimony as might be brought before it. It would be substituting the jury, or the court sitting as a jury, for the tribunal which congress had provided to determine the question, and would be making a patent of the United States a cheap and unstable reliance as a title for lands which it purported to convey."

And in *Sharp* v. *Stephens,* August 25, 1879, this court held that the defendant could not at law prove, in opposition to a patent under the donation act, that the person named therein as the wife of the settler was not his wife, and therefore not entitled to her half of the donation. Nor was it in allowing and issuing this patent alone that the secretary passed upon the question to what grant the premises belonged. In approving the lists selected under the wagon-road grant, in 1871, he did the same thing; for as yet a patent was not authorized, and the grant was complete upon the approval by

the secretary of the lists of land selected under it. The patent issued under the subsequent act of June 18, 1874, *supra,* did not pass the title, but is only record evidence of the previously-existing grant by statute, and the identity of the lands included in it. *Langdeau* v. *Hanes,* 21 Wall. 529.

In the face of *French* v. *Fyan,* and even upon general principles, counsel for the defendant does not deny but that if the patent had issued to the state for the premises under the swamp-land act, it would be conclusive in this action as to the character of the land; but it is, nevertheless, contended that the patent actually issued to the state under the wagon-road grant is not such evidence that the lands are not swamp, because, in the consideration and determination in the land department of the question whether the premises were within the wagon-road grant or not, the question whether they were swamp was not necessarily involved, and therefore cannot be said to have been considered or decided.

But this reasoning is more ingenious than sound. The effect of the decision of the secretary does not depend on the existence of an actual or formal controversy before him, carried on by parties adversely interested therein, but upon the fact that it was duly made in the regular course of the administration or execution of the law relating to the subject. Both the swamp-land and wagon-road grants were before the department for consideration and patent. Under the circumstances it was the duty of the secretary, in selecting and patenting lands under the wagon-road grant, to ascertain that they were not included in the prior grant of swamp land. And whether, as a matter of fact, this was consciously and purposely done with regard to the particular land in controversy or not, in contemplation of law it certainly was. For it was impossible for the secretary to decide, as he did, absolutely, that the land belonged to the wagon-road grant, without at the same time deciding that it did not belong to the swamp-land grant. This latter conclusion is a necessary element of the former, and therefore the law considers that, before the patent to the premises was issued as and for

wagon-road land, it was decided that they were not swamp. Or. Civ. Code, § 726.

It also appears to me that the state is estopped to say, as against its grantee, this plaintiff, that this is not wagon-road land. The state granted this land to plaintiff's vendor as wagon-road land, and allowed it to be selected and approved as such by the secretary, without objection, long before it sold it to the defendant as swamp land.

The defendant has no title to this property. He is only a purchaser in possession without the purchase money being paid, and stands, therefore, in the relation of tenant to the state, whose alleged title under the swamp-land act he sets up in bar of the action. It follows that if the state would be estopped to set up this title, or, what is equivalent thereto, to deny that the premises are wagon-road land, the defendant is also.

The state was the grantee in both these grants. It accepted the premises as part of the wagon-road grant, or allowed its grantees to do so, without objection on its part. If, however, the land is swamp in fact, the state must have neglected to furnish the department with the proper evidence thereof. It may have acted thus because it preferred that the land should pass under the wagon-road grant, and thereby be applied in aid of a useful public enterprise. For years after it was made, this swamp-land grant was not regarded with favor in this state; nor was it thought that there was any quantity of land to which it was properly applicable. It is a matter of history that up to 1870 the state refused to take any steps to secure land under it, because, for one reason, it preferred to make its selections under the school-land acts, even if damp enough to be called swamp, as in most cases the dampness was a recommendation rather than otherwise. In the meantime this land was selected and approved as wagon-road land, with the acquiescence, if not the concurrence, of the state, for the benefit of its grantee, and therefore it is now estopped to deny directly that it is included in such grant, or indirectly by alleging that it is swamp land.

A paper was also offered in evidence by the plaintiff, executed by the governor of the state, under the great seal thereof, on October 2, 1871, reciting the grant to the state and the assignment thereof to the wagon-road company, and certifying that the road had been duly constructed and accepted, and that "the lands along the line of said road, to the extent of 860,000 acres, have under said donation and grant passed to and become the absolute property of said company, as a patent or grant from the state, but was not received as such because it did not purport to be a grant or patent, but only a certificate; that in the opinion of the executive certain lands, including the premises in controversy, had become vested in the wagon-road company by virtue of the congressional and legislative grants, and the subsequent construction of the road, and because it does not appear that the governor was authorized to issue a patent for the premises under any circumstances.

My conclusion is: (1) That the patent is conclusive evidence in this action that the premises are not swamp, and therefore the oral evidence to that effect cannot be considered; and (2) that the state is estopped to deny that the premises are included in the wagon-road grant, and therefore its tenant, the defendant, is also.

*Prima facie*, the plaintiff has the legal title and is entitled to the possession, and the defendant being precluded from showing that the premises are swamp, it follows, as a matter of course, that the former must recover.

There must be a finding and judgment for the plaintiff accordingly.