UNITED STATES v. WILLAMETTE VAL. & C. M. WAGON-ROAD CO. et al.

(Circuit Court, D. Oregon.   May 18, 1892.)

GRANT OF PUBLIC LANDS IN AID OF WAGON ROAD — SUIT TO ENFORCE FORFEITURE—LACHES—ESTOPPEL.

Congress granted certain lands to Oregon in 1866 to aid in the construction of a wagon road from Albany to the eastern boundary of the state. In 1874 congress enacted that, when the road is shown by the certificate of the governor of Oregon to have been constructed and completed, patents to the lands should issue.  By 1871 such certificates had been made.  In 1882, after complaint to the department of the interior that the road had not been constructed, and after reference of the matter to congress and its refusal to act, and after investigation by the department, the patents issue.  The defendants Weill and Cahn claim to be purchasers of the land in good faith upon the strength of the governor's certificates, and further claim to have expended large sums of money on said lands after the issuance of the patents, and to have sold portions thereof with warranty; also to have fully rebuilt the road before the passage of the act of March, 1889, authorizing this suit to enforce forfeiture.  *Held*, on exceptions to their answer setting forth these facts, (1) that the defense of laches is not applicable to the United States; (2) that the United States are estopped to enforce the forfeiture; (3) that, the grant being in praesenti with condition subsequent, a construction of the road after the time limited in the grant, but before the assertion of a claim to a forfeiture, may be pleaded in defense of this suit.

In Equity. Suit by the United States against the Willamette Valley & Cascade Mountain Wagon-Road Company and others for the forfeiture of lands granted to respondents, and the cancellation of patents issued therefor. Respondents filed answers and pleas, and the bill was dismissed upon argument of the pleas. Complainant appealed, and this decision was reversed, and the cause remanded. 11 Sup. Ct. Rep. 988. Respondents thereupon answered on the merits. Heard on exceptions to the answer. Exceptions overruled.

A. H. Tanner and Franklin P. Mays, for the United States.
C. E. S. Wood, for defendants.

GILBERT, Circuit Judge. A bill was filed on behalf of the United States against the Willamette Valley & Cascade Mountain Wagon-Road Company and other defendants, setting forth the act of congress of July 5, 1866, which grants to the state of Oregon, to aid in the construction of a wagon road from Albany to the eastern boundary of the state, certain sections of the public lands situate along the line of said road, together with a right of way for the same, and confers upon the legislature power to dispose of the lands as the work progressed, upon the issuance of a certificate of the governor of the state to the secretary of the interior that any 10 miles of the same were completed; but provides that, if the road is not completed in five years, no further sales shall be made, but the land remaining unsold shall revert to the United States; and further provides that the road shall be constructed of such width, grades, and bridges as to permit of its regular use as a wagon road, and in such other special manner as the state may prescribe, and that the road shall remain a public highway for the use of the government of the United States.

The bill alleges that the state of Oregon, by an act passed October 24, 1866, transferred to the corporation defendant all lands and rights so granted to the state by congress, for the purpose of aiding the corporation in constructing the road mentioned in the act. The bill further states that by an act of congress of July 15, 1870, a change was made in the route of the road, and that the corporation defendant thereupon, by supplemental articles of incorporation changed the line of its road to conform to the act of congress; that on the 11th day of May, 1868, the officers of the corporation fraudulently represented to the governor of Oregon that the road had been constructed as required by law for a distance of 180 miles from Albany, and thereby fraudulently procured a certificate to that effect from the governor; that on the 8th day of September, 1870, the 9th day of January, 1871, and the 24th day of June, 1871, further certificates were fraudulently procured, to the effect that the remainder of the road to the state line had been completed; but the bill alleges that the road never was constructed.

The bill further alleges that by act of congress of June, 1874, patents for the granted lands were authorized to be issued to the state of Oregon, or to any corporation to which its rights had been

transferred in all cases where the roads in aid of the construction of which said lands were granted are shown by the certificate of the governor of Oregon, as in said acts provided, to have been constructed and completed: "provided that this shall not be construed to revive any land grant already expired, nor to create any new rights of any kind, except to provide for issuing patents for lands to which the state is already entitled."

The bill then avers that patents were issued on June 19, 1876, for 107,893.01 acres of the lands, and on October 30, 1882, for 440,856.72 acres. The prayer of the bill is that all of the lands granted to the state by the act of July 5, 1866, be decreed to be forfeited to the United States, and restored to the public domain, and that the certificates and patents be declared fraudulent and void.

To this bill the defendants Weill and Cahn first filed two pleas, with accompanying answers. The first plea set up that the patent of October, 1882, was issued after due examination by the secretary of the interior, and in pursuance of the act of June, 1874, and that said defendants, relying thereon, had paid taxes and other expenses on said lands, and had sold portions thereof with warranty of title, and that it would be inequitable for the United States to claim a forfeiture of the lands. The second plea averred that in 1871 these defendants, believing that the road had been fully completed, as certified by the governors of Oregon, made purchase of the lands in good faith, and paid therefor $161,400. The pleas were set down for argument upon their sufficiency, and it was held upon the facts contained in the first plea that the claim of the government was a stale claim, and that lapse of time was a bar to the suit, and that the second plea was good, for that it showed that the defendants were bona fide purchasers, (42 Fed. Rep. 351;) and the bill was dismissed. Appeal was taken to the supreme court, and the decision of the circuit court was reversed; the supreme court holding that the defense of laches could not be made as against the government, and that the United States should have the opportunity to file replication, and put in issue the allegations of the pleas, (11 Sup. Ct. Rep. 988.) When the case was remanded to this court, the defendants Weill and Cahn, instead of relying upon the pleas, answered the bill upon its merits, and the case now comes before the court on exception to portions of the answer, for impertinence.

The first exception is to that portion of the answer which responds to the allegation of the bill that the defendant corporation, in constructing the wagon road, was bound to construct the same in the manner prescribed by an existing statute of the state of Oregon, enacted October 14, 1862. The points involved in this exception were ably discussed by Judge Sawyer in the case of U. S. v. Dalles Military Road Co., 40 Fed. Rep. 114, in which he held that the act of congress of February 25, 1867, granting the lands to the state, and the act of the legislature of Oregon of October 20, 1868, transferring the grant to the defendant corporation, formed the entire statutory contract with the road company, and that in the method of constructing the road the company was entirely un-

affected by the act of the legislature of October 20, 1868. No doubt can be entertained of the correctness of that decision, and the first exception is denied.

The second exception is to the allegation in the answer that long before congress passed the act of March 2, 1889, authorizing this suit, the defendants had entirely rebuilt the road in a substantial manner. It is claimed on behalf of the complainant that a construction of the road by the defendants after the expiration of the time limited in the act therefor comes too late, and will not avoid the forfeiture. This question has also been decided in this court in the previous decisions of this case, (42 Fed. Rep. 351,) where Judge Deady, upon the authority of numerous decisions, held that the grant from the government was a grant in praesenti, with condition subsequent, and could only be defeated upon breach of such condition, the condition subsequent here being that the road be completed in the manner provided by the act within five years from the date thereof; and that, if this condition were not complied with, the United States might, by legislative enactment or judicial proceedings, have enforced the forfeiture; but that, until such action by the government, the title remains in the grantee. It is not claimed that any forfeiture was declared or sought prior to the passage of the act of March 2, 1889. If the road was constructed at any time before that date, the defendants should be allowed to show that fact, and the exception will be denied.

The remaining exceptions are taken to the defenses which are, in substance, as follows: That in 1878 complaint was made to the department of the interior that the road had not been built, and thereupon the commissioner of the general land office appointed an agent to report upon the same; that the agent reported that the complaint was true; that in 1880 the report, with the accompanying evidence, was laid before both houses of congress, and referred to the appropriate committees of the same; that the committees, after examination, each reported that no action be taken; that the secretary of the interior thereafter examined the report and evidence, and in 1882 made decision that the evidence showed that the road was properly constructed, and directed the commissioner of the general land office to certify the same for issuance of patent, and thereupon patent issued; that the defendants, relying on the result of the investigation and the issuance of the patent, did alter their position with reference to the lands, so as to render it inequitable for the government, after such lapse of time, to assert title to the sist of—First, laches; second, estoppel. So far as laches is concerned, of $2,660.62; second, by payment of $29,853.79 for taxes; third, by payment of $109,800.97 for grading, selecting, and platting lands, and protecting their title; fourth, by selling and conveying portions of the lands with warranty of title. These defenses so pleaded consist of—First, laches; second, estoppel. So far as laches is concerned, the decision of the supreme court in this case, and in U. S. v. Insley, 130 U. S. 263, 9 Sup. Ct. Rep. 485, (reversing 25 Fed. Rep. 804, and Van Brocklin v. State of Tennessee, 117 U. S. 151, 6 Sup. Ct. Rep. 670, reversing the judgment of the supreme court of Tennessee,

and U. S. v. Nashville, C. & St. L. Ry. Co., 118 U. S. 120, 6 Sup. Ct. Rep. 1006,) must be regarded as finally settling the doctrine that laches or staleness of claim cannot be set up as a defense to any suit in equity brought by the United States to assert rights vested in them as a sovereign government, unless congress has clearly manifested its intention otherwise.

It is contended that congress has expressed a contrary intention in this instance by providing in the act of March 2, 1889, which authorizes the prosecution of this suit, that it shall be tried and adjudicated in like manner and by the same principles and rules of jurisprudence as other suits in equity are therein tried; and it seems difficult to give any meaning to these words without giving them the construction contended for; but, in the light of the decision of the supreme court in this case, it must be held that the "other suits in equity" to which reference is made are suits in which the United States is a party, and that it was not the intention of the statute that the defendants in this suit should avail themselves of defenses not open to defendants in other suits brought by the United States.

These portions of the answer, however, set up matter by way of estoppel, and it remains to be considered whether that defense is applicable in this case. The government is not ordinarily bound by an estoppel. While individuals may be estopped by the unauthorized acts of their agents, apparently within the scope of their agency, the sovereign power, being the trustee of the people, is rarely, if ever, bound by the acts of its agents; but, while it is true that for the neglect or the illegal or unauthorized acts of its agents the government should not ordinarily be estopped to show the truth, there is good authority, based upon sound reasoning, to support the doctrine that where the government has acted by legislative enactment, resolution, or grant, or otherwise than through the unauthorized or illegal acts of its agents, and the parties dealing with the government have relied upon the same, and in good faith have so changed their relation to the subject-matter thereof that it would be inequitable to declare such action or grant illegal, the government will be estopped. Com. v. Andre, 3 Pick. 224; Cahn v. Barnes, 7 Sawy. 48, 5 Fed. Rep. 326; State v. Milk, 11 Fed. Rep. 397; Pengra v. Munz, 29 Fed. Rep. 830; Woodruff v. Trapnall, 10 How. 190. No good reason can be offered why the United States, in dealing with their subjects, should be unaffected by considerations of morality and right which ordinarily bind the conscience. The defense of estoppel stands upon different ground from that of laches. It is held that laches is not imputable to the government upon grounds of public policy. The common-law rule that no lapse of time can bar the right of the king is not only recognized in the United States, but is deemed to be applicable, with added reason, from the fact that here property is held, not as by a monarch for personal or private purposes, but in trust for the common welfare; and, where the agencies of the people are so numerous and scattered, the utmost vigilance would not save the public from loss; but, when matter of estoppel arises, the observance of honest dealing may become of higher importance than the preservation of the public domain. It was well said in Wood-

ruff v. Trapnall that we naturally look to the action of a sovereign state to be characterized by a more scrupulous regard to justice and a higher morality than belong to the ordinary transactions of individuals.

If it be true that the matters involved in this suit were investigated, as set forth in the answer, and the patents were thereafter issued, and the defendants, assuming that such action was a final determination of the question of title, and relying on the same, made the expenditures they claim to have made, the government should be estopped from enforcing the forfeiture. The supreme court, in reversing the decree in this case, and remanding the cause, expressly refrained from deciding the questions involved in the controversy, but reversed the case, that its merits might be investigated; and I hold it to be in harmony with the construction thus given by the supreme court to the provisions of the act of March 2, 1889, as well as conformable to the general principles of equity that should govern the trial of this and all similar cases, to allow the defendants the benefit of all the defenses here pleaded.

The exceptions will be denied.