### ALTSCHUL v. CASEY.

[76 Pac. 1083.]

EVIDENCE OF CORPORATE EXISTENCE.

1. Where it appears in an action of ejectment that the United States conveyed land by patent to a company as a corporation, that the State had donated land to the same patentee as a body corporate, and that the patentee assumed to convey the lands in a corporate capacity, its legal identity as a corporation is *prima facie* established, rendering admissible for plaintiff, who claimed under the corporation, a deed purporting to have been executed by the corporation.

PRESUMPTION OF AUTHORITY OF CORPORATE GRANTOR.

2. The authority of a corporate grantor to execute a deed is presumptively established after a lapse of more than thirty years, where it appears on the face of the deed that the corporation caused it to be executed, and the deed was subsequently litigated, and its validity recognized.

SIGNATURES TO DEED BY CORPORATION.

3. A deed purporting to be a conveyance by a named corporation is sufficiently executed where the president and secretary sign it on behalf of the corporate body.

EXECUTION OF CORPORATE DEED—SEAL.

4. The use by the recorder of deeds of the letters "L. S." is a sufficient representation of the seal of a corporate grantor in a recorded deed, and presumptively the corporate seal was on the original.

CONSTRUCTION OF TERMS OF TRUST DEED.

5. Where one is appointed trustee of real estate, the legal title of which is conveyed to him by the owner by an instrument limiting his power to convey to such persons only, and at the time and in the manner the *cestuis que trustent* may designate, the provision is for the benefit of the *cestuis que trustent*, and can be waived.

WAIVER OF LIMITATION IN TRUST DEED.

6. Where a trust deed is executed by the owners of real estate, who convey the title thereof to a trustee, limiting the power of the trustee to convey only to such persons and at the time and in the manner the *cestuis que trustent* may designate, the conduct of the *cestuis que trustent* conveying to one of their number, and that one and the trustee joining in a conveyance of the land to plaintiff, amounts to a waiver of the condition in the deed.

EJECTMENT—PROOF OF TITLE BY RESPECTIVE PARTIES.

7. In ejectment plaintiff need prove only an apparently good title to prevail over simple denials; and if the defendant relies affirmatively on any title he must allege and prove it.

PRESUMPTION FROM LONG CONTINUED CONDUCT.

8. Where all the owners of a tract of land subsequent to the time of the execution of a deed· purporting to have been signed by the heirs of a former owner, have acted in reference to such property as though the deed had been signed by every heir, it will be presumed after a lapse of twenty years that the signers were all the heirs of such former owner.

SIGNATURES TO DEED—IDEM SONANS.

9. The fact that the heirs of a man named Clark signed as Clarke a deed to property inherited from him is a mere unimportant irregularity in the chain of title.

EJECTMENT—SUPERIORITY OF TITLE IS JURY QUESTION.

10. Where plaintiff in an action of ejectment set up a paper title, and established a *prima facie* case, and defendant claimed title by adverse possession, and offered proof in support of it, the question of the superiority of their respective rights was for the jury, under proper instructions as to the effect of the documentary evidence.

IRREGULAR DEED.

11. In an action of ejectment in which plaintiff claimed title to the land in controversy by legal conveyances, a deed to the property by one through whom plaintiff claimed, purporting to pass the title to a corporation not a party to the record, offered by defendant to show that plaintiff could not be the owner, is entitled to no weight as evidence, where it appears that the deed has been litigated, and declared to be a fraud on the grantor, as having been executed by an attorney in fact of the grantor without the requisite authority.

From Crook: W. L. BRADSHAW, Judge.

Action by Charles Altschul against William T. Casey relative to the ownership of real property, the plaintiff claiming through legal conveyances from the general gov-

ernment, and the defendant by adverse possession. The
trial resulted in a verdict and judgment for the plaintiff,
and the defendant appeals.                          AFFIRMED.

For appellant there was a brief over the name of *Hunt-
ington & Wilson,* with an oral argument by *Mr. Bela S.
Huntington.*

For respondent there was a brief over the name of *Wil-
liams, Wood & Linthicum,* with an oral argument by *Mr.
Chas. E. S. Wood.*

Mr. Justice WOLVERTON delivered the opinion.

After introducing a patent from the United States to the
Willamette Valley & Cascade Mountain Wagon Road Com-
pany, plaintiff introduced a deed from the company to H.
K. W. Clark, with reference to which two questions arose:
*first,* whether it was admissible without showing *aliunde*
that the company was an incorporation; and, *second,*
whether it was legally executed. It purports on its face to
be an indenture " between the Willamette Valley and Cas-
cade Mountain Wagon Road Company, a body corporate
under the laws of the State of Oregon, party of the first
part, and H. K. W. Clark, * * party of the second part;"
is signed "Luther Elkins, President of the Willamette
Valley and Cascade Mountain Wagon Road Company,"
and "James Elkins, Secretary of said Company," the let-
ters "L. S." appearing beneath these signatures; and was
"sealed and delivered in presence of" Eli Carter and Jas.
L. Cowan. The notary before whom the same was ac-
knowledged certifies that the officers signing executed the
instrument for and on behalf of said company for the
uses and purposes mentioned.

1. Answering the first objection, it must be conceded
that a corporation must have a legal existence, and be
capable of taking a conveyance, otherwise a deed purport-
ing to convey land to it will be a nullity. But when we

turn back to the patent we find that the legislature of the State has recognized the road company as capable of taking, because it has, by an act approved October 24, 1866, donated lands to the company, and the United States government has so recognized it by conveying to it by patent. These things, coupled with the fact that the company assumed to convey the same lands as and in the capacity of a body corporate under the laws of the State of Oregon, are enough, *prima facie* at least, to establish its legal entity as a corporation, if it were necessary otherwise to prove it after the deed has itself recited the fact.

2. As to the grantor's authority to execute, we agree with counsel for the respondent that the fact that it appears upon the face of the deed that the corporation caused it to be executed, which deed has since been recognized as valid (*Cahn* v. *Barnes* [C. C.] 7 Sawy. 48, 5 Fed. 326), is sufficient, after a lapse of more than thirty years, to establish presumptively the requisite authority thereto.

3. The second objection is fully answered by the case of *Moore* v. *Willamette T. & L. Co.* 7 Or. 359, the facts of which are almost identical with those developed here.

4. The one signal exception is that what is claimed to be the corporate seal here is indicated by the letters, " L. S." while in that case it is written out " Seal of Corporation." It will be noted that the instrument was proven in this case by the record of deeds, not by a production of the original. In a similar instance it was said in *Holbrook* v. *Nichol*, 36 Ill. 161, 164: " Inasmuch as the impression of the device of the seal cannot be transferred from the instrument to which it is affixed to the record by the officer making the record, it is only necessary that he should, in some appropriate mode, indicate that a seal was affixed to the certificate. And when the letters 'L. S.' the word 'Seal,' or a scroll is employed for that purpose, no reason is perceived why it is not sufficient. It is not to be ex-

pected that the officer making the record of the original
instrument can make a facsimile of the impression of the
seal. So that, where the seal on the original is indicated
on the record or a copy in the manner we have specified,
it must be held to answer the requirements of the law."
See, also, *Bucklen* v. *Hasterlik*, 155 Ill. 423 (40 N. E. 561).
In the light of these authorities, when the position of the
seal with relation to the signatures of the officers execut-
ing is considered, we may well assume that it was intended.
to indicate the seal of the corporation, so that the fact of
the recording officers' indication of the corporate seal by
the letters " L. S." does not in reality differentiate or dis-
tinguish this case from that of *Moore* v. *Willamette T. &*
*L. Co.* 7 Or. 359, and the deed must be held to have been
in form legally executed. It was therefore properly ad-
mitted in evidence.

5. The next deed in the chain of plaintiff's title is from
H. K. W. Clark to David Cahn, executed September 1,
1871. It recites a consideration of $1.00, and conveys,
among others, the premises in dispute. It further recites:

"The property hereby granted was delivered unto the
party of the first part by and through a deed of convey-
ance dated August 19, A. D. 1871, executed and delivered by
the said Willamette Valley and Cascade Mountain Wagon
Road Company to the said party of the first part [being
the deed heretofore in this opinion discussed]. But this
conveyance is nevertheless made to the said party of the
second part only upon the express trust that he the said
party of the second part shall and will hold all the prop-
erty hereby granted to the use of T. Egenton Hogg, Alex-
ander Weill, and the said party of the first part, and that
he will sell, mortgage, convey, or otherwise dispose of said
property or any part thereof to and only to such person
or persons, party or parties, corporation or corporations
and at such and only such time or times and in such and
only in such manner and upon such terms as the said T.
Egenton Hogg, Alexander Weill, and the said party of the

first part, or in case of the death of any of the last named parties then as the survivor or survivors of said three parties and the executors or administrators of the deceased party or parties, but not the heirs or legatees of either, shall in writing, such writing to be by them severally subscribed and duly acknowledged, name and appoint and determine, and in case of any sale or sales or other disposition of said property or of any part thereof shall and will at once apply the proceeds arising from such sale or other disposition so far as shall be necessary. to the payment of the money advances that have heretofore been made by the said Weill and the said party of the first part in the purchase of said property, the amount of which said advances have been determined by the parties and are specifically set forth in a written agreement executed between the said Hogg, Weill and the said party of the first part, which agreement is of even date herewith, and to the payment of such further or additional money advances as the said Weill and the party of the first part may hereafter make pursuant to the terms of the said written agreement, and the interest that shall have accrued upon any and all advances according to the provisions of said agreement and, after the payment of all said advances and interest, shall and will pay all the balances of the proceeds of the sale or sales or other disposition of said property if any such balance there shall be unto the said Hogg, Weill, and party of the first part, their heirs, executors, administrators, and assigns in the proportion of their respective interests therein, determined and declared in said written agreement, and shall and will convey all of said property that shall then remain undisposed unto the three parties last aforesaid according to the provisions of said written agreement, a copy of which agreement is placed with this instrument in the hands of the said party of the second part for his information.

"And this conveyance is made upon the further trust that the said party of the second part shall and will at any time when so requested in writing by the said party of the first part and the said Weill and Hogg, such writing to be executed and acknowledged by them severally, appoint and make such one or more of the parties making

the request or such other person or persons as shall be
named therein his attorney in fact to sell and convey said
land or such parts thereof as shall remain unsold at the
time of such "appointment."

Following this is a deed from Sarah M. Clarke, widow
of H. K. W. Clark, deceased, to Alexander Weill, of date
April 9, 1879, conveying to him all her right, title, and
interest in the lands conveyed by H. K. W. Clark to Cahn
in trust for Weill, Hogg, and Clark; a deed from Fred K.
W. Clarke, of same date, to Alexander Weill, conveying all
his interest in the land; a deed bearing date February
18, 1879, from T. Egenton Hogg to Alexander Weill, of
all his right, title, and interest in the grant; a power of
attorney of date May 13, 1884, from Alexander Weill and
wife to David Cahn and Eugene Meyer, authorizing them,
either jointly or severally, to sell and convey their interest
in the grant; and a deed of date March 31, 1893, from
David Cahn and wife and Alexander Weill and wife by
Eugene Meyer, their attorney in fact, to Charles Altschul,
the plaintiff.

It is objected that this record is insufficient to vest the
legal title of the premises in dispute in the plaintiff, and
that it was error in the court to instruct the jury that it
had that effect; the principal reasons urged being that the
deed from Clark to Cahn conveyed a mere naked legal title,
and that by the terms thereof it was made a condition pre-
cedent to Cahn's disposing of the property that he should
first have the authority thereto of the *cestuis que trustent*,
executed in the manner designated, and, no such consent
having been shown, no title passed from Cahn. Cahn
had more than a naked power. He had the legal title,
which he held in trust for Weill, Hogg, and Clark, but no
other interest. The sole equitable title was in Weill, Hogg,
and Clark, and manifestly it was to protect them that the
clause was inserted in the deed by which Cahn covenanted

to sell only to such persons and at the time and in the manner that they might name, appoint, or designate. It may be admitted, we think, that Cahn could not make a conveyance, so as to carry the title without such assent, manifested in the manner designated; but it seems clear that the *cestuis que trustent*, for whose benefit the stipulation is contained in the trust deed, could waive the condition either expressly or by implication.

6. When they had, by apt conveyances, parted with all their interest in the subject of the trust, what more can be urged indicating such a waiver? Mrs. Clark, the widow of H. K. W. Clark, and Fred K. W. Clark, first conveyed all their interest to Weill, one of the *cestuis que trustent*, and then Hogg likewise conveyed to Weill; thus divesting themselves of all right, title, interest, power, or control over the property, leaving Weill as the sole remaining *cestui que trust*. Subsequently Weill and Cahn joined in a deed to the plaintiff. Thus all parties connected with the trust affair, so far as it was within their power, by deed or conveyance divested themselves of every right or interest they had or possessed in the entire subject of the trust. Suppose that the trustee and *cestuis que trustent* had on the day following the execution and delivery of the trust deed all joined in one deed to some third party, thus disregarding the stipulation touching the direction of the *cestuis que trustent*, could it be said that such a deed would not be effective to convey a valid title? Who could lay any objection to it, or deny its absolute validity? Certainly not the trustee, as he would have joined with the *cestuis que trustent* in conveying. Nor with any greater reason could the *cestuis que trustent* object, as, by joining with the trustee, they, if not expressly, would have by the strongest kind of implication, authorized the conveyance, and thus have waived their right to insist upon Cahn's covenant in that regard. Neither of

these parties could question the title thus conveyed, and none other could question it, as no one else would have had any interest in the property. Now, is it any more objectionable that all the other *cestuis que trustent* have conveyed to one of their number, who, having thus acquired their entire interest, has joined with the trustee and conveyed to the plaintiff? The effect in either case would manifestly be the same. The grantee's title would be such that none of the parties to the transfer could question it, and, if good against them, they together having formerly been invested with the whole title, it would be good against every other person, including the defendant.

7. It may be stated in this relation that it is not indispensable that the plaintiff in an action of ejectment should show a perfect indefeasible estate in fee simple to authorize a recovery against one who can establish no legal right in property or in possession. It is sufficient that he shows *prima facie* a good title; that is, one that is apparently good. It is true that the defendant, so to speak, may fold his arms, and await the establishment of plaintiff's title, since the burden of proof is upon the latter, but he cannot defeat the plaintiff's title by showing title in another or in himself unless he plead it. If, however, he sets up such title in another or in himself, he assumes the burden of proving it, as the plaintiff is required to prove his title, and it is not incumbent upon plaintiff negatively to establish the nonexistence thereof, but he may stand upon his *prima facie* case, if he so desires, and, if it proves to be the better title, he will prevail: Tyler, Eject. 74; 10 Am. Eng. & Enc. Law (2 ed.) 481, 532; *Moore* v. *Willamette T. & L. Co.* 7 Or. 359; *Phillippi* v. *Thompson*, 8 Or. 428; *Greenleaf* v. *Birth*, 31 U. S. (6 Pet.) 302; *Zeringue* v. *Williams*, 15 La. Ann. 76; *Parkersburg Industrial Co.* v.

*Schultz*, 43 W. Va. 470 (27 S. E. 255); *Lewis* v. *Goguette*, 3 Stew. & P. 184.

In this connection objection is made that Cahn had no power or authority to substitute another to convey in his name. But the contingency is provided for in the deed.

8. There is also another objection—that no proof was offered showing that Mrs. Clark and Fred K. W. Clark were the sole heirs of H. K. W. Clark, deceased. As to this we are in some doubt, but when we come to consider that all the parties to the record have subsequently treated and dealt with the title as though no other was interested therein, we think it may be fairly presumed that all the heirs have parted with what title they possessed.

9. That Mrs. Clark and Fred K. W. Clark appear to have written their names " Clarke " is clearly not an irregularity that will defeat the conveyance: Newell, Eject. 586.

10. We are impressed that the patent and deeds noticed in this opinion were sufficient *prima facie* to vest the legal title in the plaintiff. Nor did the trial court err in so instructing the jury. The defendant set up title in himself by adverse possession, and offered much proof to establish it. The court instructed fully as to his contention, and, having done so, the instruction as to the effect of the patent and deeds should be read in connection with it, and the jury must have so understood it.

11. Another objection should be noticed. The defendant offered in evidence a deed from Weill to the Willamette Valley & Coast Railroad Company, incorporating a contract between Hogg and Weill, awarding the former an option for two years to purchase the wagon road grant, through which it is claimed that the title to the property became vested in the Willamette Valley & Coast Railroad Company, and hence that plaintiff could not be the owner. These instruments are of no legal consequence, however, as they have been declared void, and the pretended deed

a fraud upon Weill, having been executed by Hogg as his attorney in fact, but without the requisite authority. See *Altschul* v. *Hogg*, (C. C.) 62 Fed. 539.

Finding no error in the record, the judgment will be affirmed.                                                      AFFIRMED.

---

Decided 20 June, 1904.